2007 OK 97

James Clayton STUMP, Trustee of the James Clayton Stump Revocable Intervivos Trust, Plaintiff/Appellant,

v.

George A. CHEEK and Diana M. Cheek, Defendants/Appellees,

and

Clinton B. Keating and Ruth M. Keating, Third Party Defendants,

and

Donald Ray Meints, Rene Cheryl Meints, Ronald W. Garrett, Linda N. Garrett, Floyd H. Decou, and Albertine Decou., Third Party Defendants.

No. 103,554.

Supreme Court of Oklahoma.

Dec. 12, 2007.

Rehearing Denied March 10, 2008.

Byron D. Todd, Tulsa, OK, for Plaintiff/Appellant.

Mark W. Kuehling, Oklahoma City, OK, for Defendants/Appellees.

KAUGER, J.

¶1 The question presented is whether the trial court erred in denying the appellant's motion for attorney fees, costs, and expenses under the Nonjudicial Marketable Title Procedures Act, 12 O.S.2001 § 1141.1 *et seq.* We find that it did.

## FACTS

¶2 This appeal arises from an action to quiet title to a disputed tract of real property located on Grand Lake in Delaware County, Oklahoma. The tract is a 20′ × 30′ portion of Lot 5, Block 1 of the subdivision of Lakeport, Oklahoma (Disputed Tract).[1] On January 28, 1947, Lawrence Ousterhout (Ousterhout) and George Housley (Housley) bought Lot 8, Block 1 in the Lakeport subdivision from the developer. Because Lot 8, Block 1 did not have access to the lake, on October 6, 1948, Ousterhout and Housely also bought the west thirty feet of Lot 7, Block 1 and the disputed tract from the developer to gain access to Grand Lake. The southern edge of the disputed tract is along the lakeshore.

¶3 In 1952, the appellant, James Clayton Stump (Stump/requestor), and his father, C.H. Stump, obtained Ousterhout's undivided one half interest in Lot 8, Block 1, the west thirty feet of Lot 7, Block 1, and the disputed tract as joint tenants. In 1964, Stump and his wife, LaVerna Stump, obtained Housley's

one-half interest in Lot 8, Block 1, the west thirty feet of Lot 7, Block 1, and the disputed tract as joint tenants. By May 12, 1999, both C.H. Stump and LaVerna Stump had died, and Stump held the property in fee simple. On February 9, 2001, Stump conveyed his interest in the property to the James Clayton Stump Revocable Intervivos Trust (Stump Trust), of which Stump is the trustee.

¶4 At some time prior to 1992, third party defendants Clinton B. Keating and Ruth M. Keating (the Keatings), became involved in a dispute with third party defendants Floyd and Albertine DeCou over ownership of parts of Lots 4 and 5, Block 1 of the Lakeport subdivision. On September 24, 1992, the Keatings entered an agreed journal entry of judgment (Keating judgment) that found that the Keatings held title to portions of Lots 4 and 5, Block 1 of the Lakeport subdivision. Stump and his predecessors in title to the disputed tract were not named parties to the Keating judgment. The portion of Lot 5 described in the Keating judgment overlapped the disputed tract. On January 8, 1993, the Keatings conveyed a portion of Lot 5 to the appellees, George A. Cheek and Diana M. Cheek (the Cheeks), by warranty deed. The portion of Lot 5 conveyed by this deed overlapped the disputed tract.

¶5 Stump discovered this apparent cloud on his title in 2003. On January 15, 2003, he made a written request asking the Cheeks to remove the cloud by filing a quitclaim deed to the disputed tract and enclosed a quitclaim deed that he had prepared. The Cheeks declined Stump's request. On June 10, 2003, Stump, as trustee of the Stump Trust, filed a petition to quiet title to the disputed tract.[2]

---

1. The legal description of the disputed tract is:

   A part of Lot 5, Block 1, Lakeport, Oklahoma, a subdivision according to the recorded Plat thereof, more particularly described as follows: Beginning at SW Corner of Lot 7, Block 1, Lakeport Subdivision; thence E. along the S. boundary of said Lot 7, 30 ft.; thence in a Southeasterly direction to the contour line of the Grand River Dam Property Line, being the 750 contour line thereof, and being 52 feet in a Southwesterly direction from the NE corner of said Lot 5; thence following on the said 750 foot contour line in a Southwesterly direction 30 feet; thence in a Northwesterly direction to the place of beginning, all in Lakeport, Okla-

   homa, a subdivision, according to the recorded plat thereof.

2. Title 12 O.S.2001 § 1141(A) provides:

   An action may be brought by any person in possession, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to the person bringing the action for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession. The person or persons bringing such action shall not be required

On July 28, 2003, the Cheeks filed their answer, alleging that they owned the disputed tract pursuant to the Keating judgment. On December 5, 2004, Stump moved for summary judgment on the title issue and asked for attorney fees, costs, and expenses under the Nonjudicial Marketable Title Procedures Act (The NMTPA/ The Act), 12 O.S.2001 § 1141.1 *et seq.*[3]

¶ 6 On January 5, 2006, the trial court granted Stump's motion for summary judgment, finding that Stump, as trustee of the Stump Trust, held title to the disputed tract in fee simple. The trial court reserved making a finding on the issue of attorney fees, costs, and expenses. On June 8, 2006, the trial court entered an order denying attorney fees, costs, and expenses to Stump, finding that the NMTPA did not permit a prevailing party to recover attorney fees, costs, and expenses if the prevailing party's claim was based on a judgment of a court of competent jurisdiction.

¶ 7 Stump appealed, filing his petition in error on July 10, 2006. On February 14, 2007, the cause was assigned to the Court of Civil Appeals. On March 16, 2007, the Court of Civil Appeals affirmed the ruling of the trial court, finding that the NMTPA excluded an award of attorney fees, costs, and expenses in an action to remove an apparent cloud on title based on a judgment of a court of competent jurisdiction. On April 5, 2007,

Stump petitioned the Court of Civil Appeals for rehearing, which was denied on April 18, 2007. On May 8, 2007, Stump petitioned this Court for certiorari, which was granted on September 11, 2007.

### I.

¶ 8 **THE NONJUDICIAL MARKETABLE TITLE PROCEDURES ACT DOES NOT PREVENT A PREVAILING PARTY WHO HAS OTHERWISE COMPLIED WITH THE ACT FROM RECOVERING ATTORNEY FEES, COSTS, AND EXPENSES WHEN THE CLOUD ON TITLE UNDERLYING THE ACTION ARISES FROM A JUDGMENT.**

¶ 9 The first issue presented is one of statutory construction, which is a question of law that we review *de novo* and over which we exercise plenary, independent and non-deferential authority.[4] The primary goal of statutory construction is to ascertain and follow the intent of the legislature.[5] The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole.[6]

¶ 10 The NMTPA is found at 12 O.S.2001 §§ 1141.1–1141.5.[7] The Act seeks to

---

to allege the particular estate or interest claimed adversely by the person or persons against whom the action is brought, but may allege that the defendants' claim is adverse to that of the plaintiffs.

**3.** Title 12 O.S.2001 §§ 1141.1–1141.5, see note 12, infra.

**4.** *St. John Medical Center v. Bilby,* 2007 OK 37, ¶ 2, 160 P.3d 978; *Twin Hills Golf & Country Club, Inc. v. Town of Forest Park,* 2005 OK 71, ¶ 5, 123 P.3d 5; *State ex rel. Okla. Tax Comm'n v. Texaco Exploration & Production,* 2005 OK 52, ¶ 7, 131 P.3d 705.

**5.** *Cooper v. State ex rel. Dept. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466; *TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶ 5, 829 P.2d 15; *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 1988 OK 117, ¶ 7, 764 P.2d 172.

**6.** *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 11, 33 P.3d 302; *George E. Failing Co.*

*v. Watkins,* 2000 OK 76, ¶ 7, 14 P.3d 52; *Naylor v. Petuskey,* 1992 OK 88, ¶ 4, 834 P.2d 439.

**7.** The Nonjudicial Marketable Title Procedures Act, 12 O.S.2001 §§ 1141.1–1141.5, provides in its entirety:

§ 1141.1
This act shall be known and may be cited as the "Nonjudicial Marketable Title Procedures Act".
§ 1141.2
As used in this act:
1. "Apparent cloud" means an effect, without a judgment of a court of competent jurisdiction, which in the good faith opinion of a requestor results in a condition of title to real property located in the State of Oklahoma that fails to meet the standard of "marketable title" as defined by the "Oklahoma Title Examination Standards" as adopted and revised by the House of Delegates of the Oklahoma Bar Association;
2. "Certified mail" means that method of transmitting items through the United States

Post Office pursuant to which the addressee of the item mailed is either required to indicate an acceptance of delivery or refusal or which results in a record by the United States Post Office that the addressee was contacted regarding the item, but refused delivery or refused to claim the item;

3. "Conveyance" means an instrument, recorded in the real property records of a county of the State of Oklahoma, pursuant to which a grantor makes a transfer of an estate in real property;

4. "Corrective action" means some procedure, other than the execution and delivery of a curative instrument, identified in a notice and communicated to a respondent with the intended effect of removing a cloud or an apparent cloud on the title to real property;

5. "Curative instrument" means a conveyance or instrument identified by a requestor that the requestor in good faith believes has the effect of curing a title defect;

6. "Entity" means a person, firm, partnership, general partnership, limited partnership, corporation, limited liability company, limited liability partnership or other legally constituted entity;

7. "Estate" means a quantity or duration of ownership in real property located in the State of Oklahoma whether in fee simple absolute or some lesser quantity or duration and includes both the surface estate and mineral estate;

8. "Execute" means to subscribe an instrument or a conveyance as either a natural person acting in an individual or a representative capacity;

9. "Good faith" means having a basis in facts ascertainable to a requestor or which should be ascertainable with the exercise of reasonable diligence and the reasonable application of law to facts known or which, through the exercise of reasonable diligence, should be known to a requestor regarding the effect of an instrument upon the title to real property located in the State of Oklahoma;

10. "Instrument" means a document, executed with formalities authorized or required by law, pursuant to which either a conveyance is made or pursuant to which some aspect of the title to real property located in the State of Oklahoma is affected or may be affected;

11. "Interest" means either legal title or an equitable claim which is made in good faith;

12. "Notice" means the document described in Section 3 of this act;

13. "Parcel" means real property capable of separate description from any other real property located in the State of Oklahoma, pursuant to a description which is adequate for a conveyance pursuant to the requirements of the laws of the State of Oklahoma;

14. "Person" means a natural person acting in an individual capacity or a natural person acting in a representative capacity;

15. "Quiet title action" means a civil action filed pursuant to the authority of Section 1141 of Title 12 of the Oklahoma Statutes and in which the plaintiff requests a determination or judgment from the court regarding the title to a parcel of real property;

16. "Real property" means land and fixtures and includes the surface estate and the minerals underlying lands located in the State of Oklahoma;

17. "Refuse" means that the respondent either will not take the action specified in a notice or that the respondent will not take action which the requestor communicates as an acceptable response to the notice;

18. "Requestor" means any person or entity transmitting a notice to a respondent pursuant to Section 3 of this act or if the requestor engages the services of an agent or fiduciary to prepare the notice, the agent or fiduciary of the requestor;

19. "Respondent" means the person or entity to whom a notice is transmitted pursuant to Section 3 of this act or, if the respondent engages the services of an agent or fiduciary to prepare a response to a requestor, the agent or fiduciary of the requestor;

20. "Response" means the document transmitted by the respondent to the requestor within the time prescribed by Section 4 of this act;

21. "Subject parcel" means the specific real property identified in a notice transmitted to a respondent as provided by Section 3 of this act;

22. "Title" means the judicial or nonjudicial conclusion regarding either legal or equitable ownership of real property or an estate in real property located in the State of Oklahoma; and

23. "Title defect" means a deficiency, as measured or determined by reference to the statutes of the State of Oklahoma, cases decided by the courts of the State of Oklahoma or by reference to the Title Examination Standards published by the Real Property Section of the Oklahoma Bar Association, in the legal or equitable title of real property located in the State of Oklahoma.

§ 1141.3

A. Any person or any entity having an interest or claiming an interest with respect to any parcel of real property who in good faith asserts that there is an instrument filed in the real property records of the county in which the real property, or some portion of the real property, is located and who would otherwise be required to file a quiet title action with respect to the parcel pursuant to the provisions of Section 1141 of Title 12 of the Oklahoma Statutes, may use the procedures authorized by this act to attempt to remove a cloud or an apparent cloud on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action.

B. The provisions of this act are permissive and shall not be required as a condition precedent to the filing of a petition to quiet title pursuant to Section 1141 of Title 12 of the Oklahoma Statutes.

C. If making a request pursuant to this act, the requestor shall send a notice to the respondent which shall include:

1. The specific identity of the person or entity requesting the respondent to execute or to execute and deliver a curative instrument or take other corrective action the purpose of which is to remove a cloud or an apparent cloud on the title of the subject parcel;

2. A specific identification of the conveyance, instrument or other document, by reference to:

    a. the county or counties in which the instrument or document is filed for record,

    b. the book and page number in which the instrument or other document is recorded,

    c. the identity of the grantor or the person or entity subscribing the instrument, (if different than the identified grantor),

    d. the identity of the grantee or grantees,

    e. the legal description of the real property contained in the instrument,

    f. the date the instrument was executed,

    g. the date the instrument was filed for record, and

    h. such other information as may be required in order for the respondent to know with reasonable certainty the exact instrument or instruments to which the requestor is referring;

3. The nature of the assertion by the requestor regarding the effect of the instrument or document as a cloud or an apparent cloud upon the title of the subject parcel; and

4. The nature of the corrective action sought by the requestor, including, but not limited to, the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

D. The requestor shall prepare and send with the notice the exact instrument or conveyance which the requestor would accept from the respondent as a curative instrument or other corrective action.

§ 1141.4

A. The requestor shall prepare the notice as described in Section 3 of this act and shall transmit the notice by certified mail to the person or entity identified in the notice as the respondent.

B. The respondent shall have a period of thirty (30) days from the receipt of the notice within which to respond to the notice and any request for the execution or delivery of a curative instrument or for corrective action.

C. A respondent may ask for clarification by the requestor or for further information prior to making either a negative response or an affirmative response. The respondent may communicate with the requestor within the period of time required for the respondent to make a response to the requestor, but any request made pursuant to this subsection shall not extend the time within which to respond.

D. The respondent may make a formal request of the requestor for clarification or for further information by certified mail if the formal request for clarification or additional information is received by the original requestor within the original period of time prescribed by subsection B of this section for a response by the respondent. If a respondent makes a formal request for clarification or for additional information, the original requestor shall have a period of twenty (20) days within which to transmit a clarification or additional information. The respondent shall then have a period of twenty (20) days from the date the clarification or additional information is received in order to provide a final response.

E. If a respondent declines to execute and deliver the curative instrument requested or take the corrective action requested, and the respondent communicates the refusal to the requestor, the requestor may pursue the remedies authorized by this section.

F. If the requestor properly transmits the notice by certified mail and the respondent does not claim the item as indicated by the records of the United States Post Office, the refusal to claim the item shall be treated as a refusal to respond to the request.

G. If a respondent executes and delivers or causes to be executed and delivered the curative instrument requested in the notice or takes the corrective action requested, the respondent shall not be liable for the damages specified in subsection A of Section 5 of this act in a quiet title action notwithstanding that the respondent is named as a defendant in such an action.

§ 1141.5

A. If a requestor prepares a notice pursuant to Section 3 of this act, and:

1. The respondent receives the notice and fails to respond, or

2. The respondent requests clarification or additional information and then subsequently refuses to execute and deliver a curative instrument or to take the corrective action identified in the notice, or

3. The respondent refuses to claim the notice, or

4. The respondent receives the notice and refuses to take the action requested in the notice, then in the event that the requestor files an action to quiet title to the subject parcel pursuant to Section 1141 of Title 12 of the Oklahoma Statutes, and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in a notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the plaintiff in identifying the relevant instrument, preparing the notice to the respondent pursuant to Section 3 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the plaintiff with respect to the interest or apparent interest forming the basis of the action

preserve judicial resources by encouraging resolution of title disputes through curative instruments rather than through quiet title actions.[8] It accomplishes this purpose by requiring a trial court to award attorney fees, costs, and expenses to a prevailing party in a quiet title action who attempted to first resolve the matter through a curative instrument in accordance with the Act.[9] The method through which the party requesting the curative instrument (the requestor) may notify the opposite party (the respondent) is delineated in § 1141.3(C–D).[10] The method by which the respondent may accept notice and respond is delineated in § 1141.4.[11] Section 1141.5 provides the conditions under which a prevailing requestor who has complied with the NMTPA is entitled to an award of attorney fees, costs, and expenses.[12]

¶ 11 The Cheeks argue that although Stump is the prevailing party, he is not entitled to attorney fees, costs, and expenses because the NMTPA does not allow an award for a claim based on a judgment. Stump argues that the NMTPA contains no exception for a claim based on a judgment, and that he is entitled to an award of attorney fees, costs, and expenses as a prevailing party if he complied with the Act.

¶ 12 Section 1141.3(A) provides in pertinent part:

Any person or entity ... may use the procedures authorized by this act to attempt to remove **a cloud or an apparent cloud** on the title of the real property by requesting a respondent to prepare a curative instrument or to take corrective action. [Emphasis added.][13]

The term "apparent cloud" is defined at § 1141.2(1), which provides:

"Apparent cloud" means an effect, **without a judgment of a court of competent jurisdiction,** which in the good faith opinion of a requestor results in a condition of title to real property located in the State of Oklahoma that fails to meet the standard of "marketable title" as defined by the "Oklahoma Title Examination Standards" as adopted and revised by the House of Delegates of the Oklahoma Bar Association.

[Emphasis added.][14]

Stump argues that the phrase "without a judgment of a court of competent jurisdiction" does not modify the word "effect," but instead the entire text of § 1141.2(1). He insists that the definition does not create any exception for clouds arising out of judgments, but simply refers to clouds on title that have not yet been verified as such by a judgment which quiets title in the requestor. The Cheeks argue that the phrase creates an exception for any title defect that arises from a judgment, and that the NMTPA does not allow an award of attorney fees, costs, and expenses to a prevailing party in a quiet title action if the title defect underlying the action is created by a judgment.

¶ 13 Oklahoma follows the American Rule concerning the recovery of attorney

---

against the respondent, including costs and reasonable attorney fees.
B. If a defendant in the quiet title action who either failed to respond to a notice pursuant to Section 4 of this act or who refused to execute and deliver a curative instrument or take corrective action identified in the notice prevails in the quiet title action, the defendant in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages equal to the actual expenses incurred by the defendant in responding to the notice from the requestor pursuant to Section 4 of this act, and the expenses of litigation directly related to obtaining judgment quieting title in the defendant or asserting an affirmative defense with respect to the interest or apparent interest forming the basis of the action against the defendant, including costs and reasonable attorney fees.

8. *Head v. McCracken,* 2004 OK 84, ¶ 18, 102 P.3d 670.

9. Title 12 O.S.2001 § 1141.3(A), see note 7, supra.

10. Title 12 O.S.2001 § 1141.3(C–D), see note 7, supra.

11. Title 12 O.S.2001 § 1141.4, see note 7, supra.

12. Title 12 O.S.2001 § 1141.5, see note 7, supra.

13. Title 12 O.S.2001 § 1141.3(A), see note 7, supra. The phrase "cloud or apparent cloud" is also found at 12 O.S.2001 § 1141.3(C)(1) and at 12 O.S.2001 § 1141.3(C)(3), see note 7, supra.

14. Title 12 O.S.2001 § 1141.2(1), see note 7, supra.

fees. It provides that each litigant pay for legal representation and that courts are without authority to assess attorney fees in the absence of a specific statute or contract. Exceptions to the Rule are narrowly defined because attorney fee awards against the non-prevailing party have a chilling effect on open access to the courts.[15] For an award of attorney fees to be authorized under a particular statute, the authorization must be found within the strict confines of the statute. If it requires interpretation, it may be read in context with other parts of the statute and with the law in effect at the time of its enactment.[16]

¶ 14 In order to avoid judicially imposing a different meaning from that the Legislature intended, courts will not place a strained construction on the plain words of a statute.[17] General words in a statute must receive a general construction, unless restrained, explained, or amplified by particular words.[18] A statute will be given a construction, if possible, which renders every word operative, rather than one which makes some words idle and meaningless.[19]

¶ 15 The difficulty of these sections of the NMTPA is that while the terms "cloud" and "apparent cloud" are listed, only the latter is defined. Because the Legislature included the general term "cloud," and certainly did not intend it to be meaningless, we must give the term its plain and ordinary meaning. A marketable title is one free from apparent defects, grave doubts and litigious uncertainty, and consists of both legal and equitable title fairly deducible of rec-

ord.[20] Therefore, a cloud on title is any effect which prevents a title from meeting the standard of marketability.[21] This definition of a cloud on title is nearly identical to the NMTPA's definition of "apparent cloud" found at § 1141.2(1), except for the qualification "without a judgment of a court of competent jurisdiction."

¶ 16 Title defects can and do arise from judgments, as in this cause, where the cloud was created by the incorrect legal description contained in the judgment. If we were to adopt the Cheeks' interpretation of § 1141.2(1), a requestor could be awarded fees under the NMTPA if the apparent cloud on title arose from an incorrect legal description in a deed, but not if the apparent cloud arose from an incorrect legal description in a judgment quieting title, a judgment in a foreclosure, a divorce decree or a probate decree. The Legislature's purpose of encouraging resolutions of title disputes by curative instruments instead of through litigation would be frustrated by only permitting awards of attorney fees, costs, and expenses in cases where the apparent cloud does not arise from a judgment. Even if we were to adopt the Cheeks' interpretation of "apparent cloud," the NMTPA still does not exclude actions based on a "cloud," and title defects which arise from judgments would fall under the broader definition of "cloud." Thus, we would render § 1141.2(1) meaningless because its definition of "apparent cloud" would be subsumed by the definition of "cloud."

¶ 17 We find that the meaning of "apparent cloud" under § 1141.2(1) which is

**15.** *Whitehorse v. Johnson,* 2007 OK 11, ¶ 12, 156 P.3d 41; *Head v. McCracken,* see note 8, supra at ¶ 14; *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 16, 61 P.3d 234.

**16.** *Boston Ave. Mgmt., Inc. v. Associated Res., Inc.,* 2007 OK 5, ¶ 12, 152 P.3d 880; *Head v. McCracken,* see note 8, supra at ¶ 14, *Fulsom v. Fulsom,* 2003 OK 96, ¶ 8, 81 P.3d 652; *Beard v. Richards,* 1991 OK 117, ¶ 13, 820 P.2d 812.

**17.** *Ross v. Peters,* 1993 OK 8, ¶ 8, 846 P.2d 1107; *Thornton v. Woodson,* 1977 OK 185, ¶ 10, 570 P.2d 340.

**18.** *Nucholls v. Board of Adjustment of City of Tulsa,* 1977 OK 3, ¶ 6, 560 P.2d 556; *Oklahoma Tax Comm'n v. Fortinberry Co.,* 1949 OK 75, ¶ 13,

207 P.2d 301; *Walton v. Donnelly,* 1921 OK 258, ¶ 0, 201 P. 367.

**19.** *State ex rel. Thompson v. Ekberg,* 1980 OK 91, ¶ 7, 613 P.2d 466; *Integrity Mut. Cas. Co. v. Garrett,* 1924 OK 721, ¶ 11, 229 P. 282; *Matthews v. Rucker,* 1918 OK 29, ¶ 5, 170 P. 492.

**20.** Section 1.1, Oklahoma Title Examination Standards, Title 16 O.S.2001 Ch.1, App. Title Examination Standards are not binding upon this Court, but, because of their general acceptance by members of the Oklahoma Bar, are persuasive authority. *Knowles v. Freeman,* 1982 OK 89, ¶ 16, 649 P.2d 532.

**21.** *Hull v. Sun Refining & Marketing Co.,* 1989 OK 168, ¶ 9, 789 P.2d 1272.

least strained and that best follows the intent of the Legislature is as follows: an "apparent cloud" is an effect which, in the good faith opinion of a requestor, results in a condition of title to real property located in the State of Oklahoma that fails to meet the standard of "marketable title" as defined by the Oklahoma Title Examination Standards, despite the fact that the effect has not yet been adjudicated as such by a judgment of a court of competent jurisdiction. The NMTPA does not exclude Stump from eligibility for an award of attorney fees, costs, and expenses because the cloud on the title to the disputed tract arose from an incorrect legal description in a judgment.

## II.

¶ 18 **THE TRIAL COURT FAILED TO ADDRESS WHETHER STUMP COMPLIED WITH THE PROVISIONS OF THE NONJUDICIAL MARKETABLE TITLE PROCEDURES ACT.**

¶ 19 The Cheeks allege that because Stump did not comply with the requirements of the NMTPA, he cannot be awarded attorney fees, costs, and expenses as a prevailing party. The Cheeks allege that: 1) Stump did not respond to their request for clarification of the curative instrument sent to them; and 2) the curative instrument Stump sent did not conform exactly to the actual relief granted by the court, because had the Cheeks executed Stump's curative instrument, they would have relinquished any right to maintain a boat dock situated in front of the disputed tract. Stump maintains that he complied with the NMTPA, but responds that because the trial court did not address the issue of his compliance in the order appealed, this Court may not review the question.

¶ 20 The trial court interpreted § 1141.2(1) as forbidding an award because the cloud on the disputed tract arose from a judgment to quiet title,[22] and it denied his motion for attorney fees, costs, and expenses. The trial court viewed the issue as dispositive and expressly failed to address the issue of whether Stump conformed to the requirements of the NMTPA. The Order Denying Plaintiff's Application for Attorney Fees, Costs, and Expenses, provides in pertinent part:

... The statute relied upon by Plaintiff does not apply to title defects arising from a judgment of a court of competent jurisdiction. As a result, the Plaintiff is not entitled to recover its costs and attorney fees from the Cheeks. The court further finds that based on the determination that the statute does not apply to this action, it is unnecessary to address the other issues and defenses raised by the Cheeks.... [23]

¶ 21 We will not exercise our appellate jurisdiction to make first instance determinations on disputed questions of fact or law.[24] Therefore, this cause must be remanded to the trial court for further proceedings on whether Stump complied with the provisions of the NMTPA.

## CONCLUSION

¶ 22 The purpose of the NMTPA is to encourage parties to settle title disputes

---

**22.** The Honorable Robert G. Haney, Transcript of the Motion Hearing held June 7th, 2006, p. 3–5 provides in pertinent part:

... My order in this particular case was I denied your motion for attorney fees based upon the fact that that statute says on any claim other than based on a judgment then you can get fees, but if it's based on a judgment, you can't get fees. And what I ruled was, was you can't get fees because your claim was based upon the judgment ... And it's simple, if the Court of Appeals or the Supreme Court, whichever one ends up with it, if they agree with your position and reverse it and send it back, then you're entitled to your attorney fees....

**23.** Order Denying Plaintiff's Application for Attorney Fees, Costs, and Expenses, Record, p. 277. In fact, the trial court struck the following language from the proposed order:

... 2. The plaintiff failed to comply with the procedural requirements of the statute.
3. The proposed curative document that was tendered prior to the filing of suit varied from the relief ultimately granted....
Order Denying Plaintiff's Application for Attorney Fees, Costs, and Expenses, Record, p. 277.

**24.** *Holleyman v. Holleyman*, 2003 OK 48, ¶ 13, 78 P.3d 921; *Oklahoma Pub. Employees Ass'n. v. Oklahoma Dept. of Cent. Servs.*, 2002 OK 71, ¶ 21, 55 P.3d 1072; *Patel v. OMH Med. Ctr., Inc.*, 1999 OK 33, ¶ 42, 987 P.2d 1185.

through curative instruments rather than through quiet title actions. It achieves this purpose by mandating an award of attorney fees, costs, and expenses to a prevailing party in a quiet title action who has first attempted to resolve the matter with a curative instrument in accordance with the Act. To construe the NMTPA as forbidding an award of attorney fees, costs, and expenses in quiet title actions where the cloud on title arises from a judgment would frustrate the purpose of the Act. The order of the trial court is reversed and is remanded for further proceedings consistent with this opinion.[25]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED WITH DIRECTIONS.**

EDMONDSON, V.C.J., and HARGRAVE, OPALA, KAUGER, TAYLOR, COLBERT, REIF, JJ., concur.

WATT, J., (by separate writing), concurs in part and dissents in part.

WINCHESTER, C.J., dissents.

WATT, J. concurring in part and dissenting in part:

¶1 I agree with the majority that the Nonjudicial Marketable Title Procedures Act (the Act), 12 O.S.2001 § 1141.1 *et seq.*, allows the prevailing party complying with the act to recover attorney fees, costs and expenses

when the clouded title results from a judgment. Nevertheless, I would remand the matter only to determine the appropriate attorney fees, costs and expense award.

¶2 The trial court clearly indicated in its statement, on the record and cited by the majority,[1] that if this Court were to determine a cloud on title could be created by a judgment, an attorney fees award would be entered. Furthermore, the trial court deleted a statement from its order regarding the lack of compliance with the procedural steps,[2] clearly indicating that the matter was no longer at issue. Therefore, rather than remanding for a re-examination of the heretofore resolved procedural issues, I would remand only for a determination of the appropriate attorney fees award.

---

**25.** Stump also moved for appeal-related attorney fees. Appeal-related attorney fees are recoverable if statutory authority exists for their award in the trial court. *Board of County Comm'rs of Muskogee County v. Lowery,* 2006 OK 31, ¶22, 136 P.3d 639; *Casey v. Casey,* 2002 OK 70, ¶26, 58 P.3d 763; *Daniel v. Daniel,* 2001 OK 117, ¶24, 42 P.3d 863. However, because it has yet to be determined by the trial court whether Stump is entitled to an award of attorney fees, we cannot address the question.

**1.** Footnote # 22 of the majority opinion providing:

"The Honorable Robert G. Haney, Transcript of the Motion Hearing held June 7th, 2006, p. [sic] 3–5 provides in pertinent part:
... My order in this particular case was I denied your motion for attorney fees based upon the fact that that statute says on any claim other than based on a judgment then you

can get fees, but if it's based on a judgment, you can't get fees. And what I ruled was, was you can't get fees because your claim was based upon the judgment.... **And it's simply, if the Court of Appeals or the Supreme Court, whichever one ends up with it, if they agree with your position and reverse it and send it back, then you're entitled to your attorney fees....**" [Emphasis provided.]

**2.** Footnote # 23 providing:

"Order Denying Plaintiff's Application for Attorney Fees, Costs, and Expenses, Record, p. 277. In fact, the trial court struck the following language from the proposed order:
... 2. The plaintiff failed to comply with the procedural requirements of the statute.
3. The proposed curative document that was tendered prior to the filing of suit varied from the relief ultimately granted...."