2009 OK CIV APP 60
IN THE MATTER OF THE ADOPTION OF L.J.S. (now C.), a minor child.
FLETCHER WITT SEAGO and SARA NADINE SEAGO, Appellants/Counter-Appellees,
v.
CHRISTOPHER RYAN CASEY and BRANDY YASMIN BROWN RAY, a/k/a BRANDY RAY, a/k/a BRANDY CASEY, Appellees/Counter-Appellants.
Case Number: 105672
Court of Civil Appeals of Oklahoma, Division 3
Decided: February 27, 2009
Mandate Issued: July 10, 2009
R. Kevin Butler, Denker & Butler, P.L.L.C., Oklahoma City, Oklahoma, for Appellants/Counter-Appellees.
Traci L. Soderstrom, Law Office of Traci L. Soderstrom, P.C., Midwest City, Oklahoma, for Appellees/Counter-Appellants.
Larry Joplin, Judge:
¶ 1 Appellants/Counter-Appellees Fletcher Witt Seago and Sara Nadine Seago, the paternal grandparents (Grandparents) of L.J.S., now C., a minor child (Child), and Appellees/Counter-Appellants Christopher Ryan Casey and Brandy Casey, Child's adoptive parents (Parents), seek review of the trial court's order granting judgment to Parents on Grandparents' claim to visitation. In the principal appeal, Grandparents assert the trial court erred in summarily denying them visitation. By counter-appeal, Parents challenge the trial court's finding of the existence of an order for grandparental visitation prior to entry of the final decree of adoption.
¶ 2 Child is the biological offspring of Grandparents' son (Father). Child was adjudicated deprived, placed in the temporary custody of Parents, and the parental rights of Child's biological mother were terminated. Father entered an "Appearance and Limited Consent to Adoption" in the juvenile case which provided:
I voluntarily and unequivocally consent to the adoption of [Child] by [Parents], [Child's] current placement, and with the understanding that said adoptive parent[s] have agreed to allow [Child] to receive reasonable visitation with his biological grandparents, . . . [Appellants] . . . .
¶ 3 On Parents' petition to adopt Child, a final decree of adoption was entered, but the decree contained no provision for grandparental visitation. Although Parents initially permitted Grandparents visitation with Child, Parents subsequently refused them further visitation, ostensibly because Grandparents permitted Father to visit Child during periods of their grandparental visitation.
¶ 4 Grandparents filed a Motion to Determine Rights to Grandparental Visitation. Grandparents alleged their regular visitation with Child prior to Parents' termination thereof, the existence of a "long standing relationship with [C]hild," and Father's consent to adoption specifically conditioned on their right to visit Child after the adoption. 10 O.S. §5(D).
¶ 5 Parents objected. Parents asserted that no order for grandparental visitation had been entered prior to entry of the final decree of adoption, that the final decree of adoption made no provision for visitation by Grandparents, and that, absent a valid pre-adoption order for grandparental visitation, Oklahoma law proscribed entry of such an order after the adoption. 10 O.S. §5(B).
¶ 6 Parents then filed a Motion for Summary Judgment, again arguing §5(B) proscribed entry of a grandparental visitation order. Grandparents responded, arguing that §5(D) permitted entry of an order for their visitation, especially considering Father consented to the adoption specifically conditioned on their right to visit Child, their previous visitation with Child, and their established grandparental relationship.
¶ 7 By "Memorandum" filed February 15, 2008, adopted and incorporated into the Journal Entry of Judgment filed March 7, 2008, the trial court granted Parents' Motion for Summary Judgment, holding that grandparental visitation could not be granted over the unanimous objection of Parents:
The [adoptive] Parents adopted [Child] after the parental rights of both birth parents were terminated in juvenile proceedings.
At the juvenile court hearing where the birth father relinquished his parental rights, visitation rights were granted to the [Grandparents]. [Grandparents] seek to enforce those rights in this adoption case. The [adoptive] Parents were not parties in the juvenile case.
There is a question of law presented. There are no disputed factual issues.
The key provision of Title 10 is Section 5 B. which states: " Under no circumstances shall any judge grant the right of visitation to any grandparent if the child is a member of an intact nuclear family and both parents of the child object to the granting of visitation." [Grandparents'] position is that the reference to " intact nuclear family" applies solely to birth parents and not adoptive parents. The Court respectfully disagrees. See generally 3 Adoption Law and Practice, Section 13.03 which states: "In all jurisdictions adoptive families are deemed the legal equivalent of an original intact biological family."
Oklahoma law, by statute and Oklahoma Supreme Court cases, agree with the 13.03 proposition. See 10 OK Stat. Section 7507-6.5 and Matter of Fox, 567 P.2d 985 (1977) and its progeny. . . .
(Emphasis original.) Grandparents appeal, Parents counter-appeal, and the matter stands submitted on the trial court record.

Standard of Review
¶ 8 "Summary judgment is warranted only when `there is no substantial controversy as to the material facts and . . . one of the parties is entitled to judgment as a matter of law[.]'" Wylie v. Chesser, 2007 OK 81, ¶3, 173 P.3d 64, 66. (Citation omitted.) "For summary judgment for a party to be appropriate the evidentiary materials submitted must demonstrate undisputed facts on material issues supporting but a single inference in favor of that party." Id.
¶ 9 That is to say, "[s]ummary judgment settles only questions of law[,] [and] [t]he standard of review of the questions of law is de novo." Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963-964. (Emphasis original.) (Citations omitted.) "Where a controversy is resolved by summary judgment, the appellate courts review the entire summary judgment record independently and without deference to a lower court." Id. "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.
¶ 10 The trial court's construction and application of statutes also presents a question of law subject to de novo review on appeal. See, e.g., Stump v. Cheek, 2007 OK 97, ¶9, 179 P.3d 606, 609. "The primary goal of statutory construction is to ascertain and follow the intent of the legislature." Id. "The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." Id.

Adoption, Grandparental Visitation and 10 O.S. §5
¶ 11 Section 5(A) of title 10, O.S., permits grandparental visitation if it is shown (1) in child's best interests, (2) the parents are unfit or the child is harmed without grandparental visitation, and (3) "the intact nuclear family has been disrupted" in certain enumerated circumstances, including the parents' divorce, the death of one or both parents, or the placement of the child with related or unrelated third persons. 10 O.S. §5(A)(1)(a), (b), (c). Section 5(A) clearly recognizes the right of grandparents, having an existing relationship with their grandchild, to request continuation of that relationship by visitation after disintegration of the nuclear family.
¶ 12 Section 5(B) of title 10, O.S., provides:
Under no circumstances shall any judge grant the right of visitation to any grandparent if the child is a member of an intact nuclear family and both parents of the child object to the granting of visitation.
Section 5(B) clearly proscribes entry of an order for grandparental visitation over the unanimous objection of "both parents" in an existing nuclear family, and recognizes the constitutionally protected right of parents to control with whom their children associate. See, In the Matter of Herbst, 1998 OK 100, 971 P.2d 395.
¶ 13 Section 5(D) further provides:
1. If the child has been born out of wedlock and the parental rights of the father of the child have been terminated, the parents of the father of the child shall not have a right of visitation authorized by this section to the child unless:
a. the father of the child has been judicially determined to be the father of the child, and
b. the court determines that a previous grandparental relationship existed between the grandparent and the child.
2. If the child is born out of wedlock and the parental rights of the mother of the child have been terminated, the parents of the mother of the child shall not have a right of visitation authorized by this section to the child unless the court determines that a previous grandparental relationship existed between the grandparent and the child.
3. Except as otherwise provided by this section, the district court shall not grant to any grandparent of an unmarried minor child, visitation rights to that child:
a. subsequent to the final order of adoption of the child; provided however, any subsequent adoption proceedings shall not terminate any prior court-granted grandparental visitation rights unless the termination of visitation rights is ordered by the court after opportunity to be heard and the district court determines it to be in the best interest of the child, or
b. if the child had been placed for adoption prior to attaining six (6) months of age.
Section 5(D)(1) clearly proscribes entry of an order for visitation by the paternal grandparents of a child born out of wedlock after termination of the biological father's parental rights, absent an existing relationship between the child and the paternal grandparents. Section 5(D)(2) clearly proscribes entry of an order for visitation by the maternal grandparents of a child born out of wedlock after termination of the biological mother's parental rights, absent an existing relationship between the child and the maternal grandparents.
¶ 14 By its placement in section (D), and its reference to the preceding subsections, §5(D)(3) proscribes entry of an order for visitation by either the paternal or maternal grandparents "subsequent to the final order of adoption" of a child born out of wedlock after termination of the parental rights of the biological father and mother absent "prior court-granted grandparental visitation rights." Even in the presence of "prior court-granted grandparental visitation rights," §5(D)(3) permits termination of those rights if, after hearing, the trial court determines that continuation of grandparental visitation is contrary to the best interests of the adopted child. Scott v. Scott, 2001 OK 9, 19 P.3d 273.
¶ 15 Reading the provisions of §5 together, the legislature's intent is reasonably certain. First, the legislature clearly contemplated the continuation of an existing relationship between the paternal and/or maternal grandparents and a child upon the disintegration of the nuclear family by the parents' divorce, the death of one or both parents, or other enumerated circumstance, if continuation of the grandparental relationship serves child's best interests. 10 O.S. §5(A). Second, the legislature also clearly contemplated the continuation of a recognized, existing relationship between the paternal and/or maternal grandparents and a child born out of wedlock, after the parental rights of the biological father and mother have been terminated and the child has been adopted, if continuation of that relationship serves child's best interests. 10 O.S. §5(D).
¶ 16 In the present case, Father appeared in the course of the juvenile proceedings, and, on the record, consented to Parents' adoption of Child conditioned upon Grandparents' right to visitation, but the decree of adoption contained no provision for Grandparents' visitation. Under these circumstances, one might reasonably conclude that, because there was no "prior court-granted grandparental visitation right" recognized in the decree of adoption, the trial court was powerless to allow grandparental visitation "subsequent to the final decree of adoption," and the trial court properly denied Grandparent's Motion to Determine Rights to Grandparental Visitation pursuant to §5(D)(3)(a).
¶ 17 However, the record also clearly establishes: (1) the trial court in the juvenile proceedings accepted Father's relinquishment of his parental rights and consent to adopt conditioned on Grandparents' visitation, but also on the further condition that Father should have no contact with Child during those visitation periods; (2) the trial court in the juvenile proceedings and the parties agreed to confer and consent to reasonable visitation by Grandparents in lieu of a court-ordered visitation schedule; and (3) Grandparents exercised visitation with Child until disallowed by Parents. These facts, in our opinion, uncontrovertedly establish the existence of "prior court-granted grandparental visitation rights" contemplated by §5(D)(3), and we reject Parents' complaint otherwise in the counter-appeal.
¶ 18 That said, §5(D)(3) clearly authorized the trial court to vacate that award of visitation if it determined that continuation of visitation by Grandparents after Parents' adoption was not in Child's best interests. But, in the presence of a previous order for grandparental visitation, §5(D)(3)(a) proscribed termination of Grandparents' visitation after entry of the final decree of adoption absent an evidentiary hearing to determine whether Child's best interests so dictated. Scott, 2001 OK 9, ¶6, 19 P.3d at 275. Under these circumstances, one might conclude Grandparents' Motion to Determine Visitation was not subject to summary adjudication, the order granting Parents' motion for summary judgment should be reversed, and the cause remand for further proceedings.
¶ 19 As we have previously observed, §5(B) absolutely proscribes entry of an order for grandparental visitation over the unanimous objection of the parents in an intact nuclear family, and Oklahoma law recognizes the creation of a new nuclear family upon entry of a decree of adoption. 10 O.S. 2001 §7505-6.5(A),[1] (C).[2] Under the predecessor to §7505-6.5, the Oklahoma Supreme Court thirty years ago acknowledged the right of adoptive parents to permit or proscribe visitation by the adopted child's grandparents, as the adoptive parents, in the exercise of their unfettered discretion, might determine:
The purpose of adoption proceedings is to terminate all legal relationships and rights between a minor child and its natural parents, and to establish these rights in the adoptive parents. . . . A decree of adoption severs the child from its own family tree and engrafts it upon that of the new parentage. Public policy requires the severance of all old ties. The effect of adoption is to readjust a fundamental human relationship, and to establish a family status at law with all the legal consequences, obligations and incidents arising and growing out of the status of natural parent and child. Where the adoption statute accords the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include a grant of visitation privileges to the parent or members of the [natural] parent's family in the decree.
. . . .
Under the statute, 10 O.S. 1971 §60.16 [now, 10 O.S. §7505-6.5],the adoptive parents are entitled to exercise all the rights of natural parents. Thus, whether the natural grandmother . . . [may] continue visitation with the children is within the discretion of the children's adoptive parents. While we sympathize with the considerations which lead the trial court to grant visitation rights in this case, the compassion shown by the trial judge must give way to the new family union which the law has created. The severance by adoption must be complete. Although the new parents are free to allow anyone they wish to visit the children, there is no legal authority for compelling them to do so once the final decree of adoption is entered.
In the Matter of Fox, 1977 OK 126, ¶¶5, 7, 567 P.2d 985, 986-987. (Footnotes omitted.)
¶ 20 Given this authority, and reading §5(B) and §5(D) together, we conclude that both §5(B) and §5(D) proscribe an award of grandparental visitation over the unanimous objection of either the natural or adoptive parents in an intact nuclear family where the right to grandparental visitation has never been established or judicially recognized. However, where a court has granted grandparental visitation prior to an adoption, and the adoptive parents object, §5(D) mandates that, before vacating the prior order for grandparental visitation, the court must afford the parties an opportunity to be heard and determine whether termination of the order for grandparental visitation is in the best interest of the child.
¶ 21 In the present case, the trial court held visitation to Grandparents could not be allowed over Parents' objection under §5(B). However, we have previously held the uncontroverted facts established the existence of "prior court-granted grandparental visitation rights" contemplated by §5(D)(3). Under §5 as we have construed it, because Grandparents were granted visitation rights in the juvenile proceedings prior to Child's adoption, §5(B) did not apply, and §5(D)(3) required the trial court to conduct an evidentiary hearing because it is "[o]nly after conducting the statutorily-mandated subsection 5[(D)(3)] hearing to determine the best interest of the child will the court have the facts necessary for an informed decision." Scott, 2001 OK 9, ¶6, 19 P.3d at 275.
¶ 22 We consequently hold the trial court erred in summarily adjudicating Grandparents' Motion to Determine Visitation. The order of the trial court granting the Parents' Motion for Summary Judgment is therefore REVERSED, and the cause REMANDED for further proceedings.
MITCHELL, C.J., and HANSEN, P.J., concur.
NOTES
[1] "After the final decree of adoption is entered, the relation of parent and child and all the rights, duties, and other legal consequences of the natural relation of child and parent shall thereafter exist between the adopted child and the adoptive parents of the child and the kindred of the adoptive parents. . . ."
[2] "A grandparent, who is the parent of the minor's biological parents, may be given reasonable rights of visitation to the child, only to the extent permitted by the provisions of Section 5 of this title."