2011 OK CIV APP 23

**Nancy HATTON, Petitioner/Appellee,**

**v.**

**Kaylee Martin Smith LYNCH, Respondent/Appellant.**

No. 106,300.

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 10, 2010.

Russell N. Singleton, Enid, OK, for Appellant.

David C. Henneke, Enid, OK, for Appellee.

JERRY L. GOODMAN, Judge.

¶ 1 Kaylee Martin Smith Lynch (Mother) appeals the trial court's September 10, 2008, order granting Nancy Hatton (Grandmother) visitation with N.B.M. (Child). Mother proposes that the trial court had no jurisdiction or, if it did, it incorrectly applied the law. Based on our review of the facts and applicable law, we affirm.

## FACTS

¶ 2 On April 25, 2006, Grandmother filed a petition to establish grandparental visitation with Child. She alleged her deceased son, who died in 2001, was Child's biological father. She alleged she had thereafter established a close relationship with Child and requested a visitation schedule be entered to continue that relationship.

¶ 3 Mother filed an answer. She denied it was in Child's best interest to award Grandmother visitation and alleged there was no harm to Child in denying Grandmother visitation.

¶ 4 The parties agreed to mediation. This produced an agreement between the parties, dated October 27, 2006, in which a visitation schedule was established for Grandmother that included her visiting with Child during Spring Break from school.

¶ 5 In March 2007, Mother and Child moved to Oregon the weekend before Spring Break. Grandmother sought an emergency

order to enforce the agreed visitation rights. The trial court granted this request in an order filed March 16, 2007.

¶ 6 On April 2, 2007, Mother, now an Oregon resident, filed a motion in Oklahoma to dismiss Grandmother's petition for visitation for the reason that Child no longer resided in Oklahoma; therefore, an Oklahoma court no longer had jurisdiction to try the matter.

¶ 7 There was no pending action filed in Oregon, except for a request to the Oregon court to confer with the Oklahoma court regarding jurisdiction. The two courts did confer. They agreed that Oklahoma retained jurisdiction and Oregon deferred to that jurisdiction.

¶ 8 The trial court held a hearing on January 18, 2008. Subsequently, the trial court entered findings of fact and conclusions of law in a minute order filed February 1, 2008. This was later memorialized in an appealable order filed September 10, 2008, in which the trial court granted Grandmother visitation. Mother now appeals.

## STANDARD OF REVIEW

¶ 9 The trial court's construction and application of statutes presents a question of law subject to *de novo* review on appeal. *Stump v. Cheek*, 2007 OK 97, ¶ 9, 179 P.3d 606, 609. "The primary goal of statutory construction is to ascertain and follow the intent of the legislature." *Id.* "The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." *Id.*

## ISSUES

### *Jurisdiction*

¶ 10 Mother first contends the Garfield County District Court lost jurisdiction over the matter when Mother and Child moved to Oregon. Mother concedes that when Grandmother filed her petition, and when Mother filed her answer, Oklahoma was Child's home state and the matter was properly before the Oklahoma court. Mother counters, however, that when she and Child moved to Oregon, Oklahoma lost jurisdiction and the trial court's subsequent order of visitation was void for lack of jurisdiction.

¶ 11 It is safe to say, without detailed analysis, that because Oklahoma was the home state when the matter was initiated, and the Oregon court had the opportunity to assume jurisdiction, but instead chose to defer jurisdiction to Oklahoma to resolve the pending matter, the Oklahoma Court had jurisdiction to dispose of the visitation issue before it.

### *Grandparental Visitation Statute*

¶ 12 Mother next contends the trial court misapplied 10 O.S.2001 and Supp.2008, § 5 (Grandparental Rights to Visitation with Unmarried Minor Act (Act)). At the time of filing, Grandmother sought rights pursuant to 10 O.S.2001 and Supp.2008, § 5, (Now renumbered as 43 O.S. Supp.2009, § 109.4 by Laws 2009, HB 2028, c. 233, § 197, emerg. eff. May 21, 2009.) We will refer to the statute in effect (§ 5) at the time of the trial court's order, which provides the specific elements which must be proved in order to obtain visitation rights. *Murrell v. Cox*, 2009 OK 93, 226 P.3d 692.

¶ 13 In the case before us, the trial court made the following relevant findings of fact:

3. Daniel Marcus Hatton II, was the natural father of said minor child and the son of Petitioner and he passed away on September 30, 2001.

4. The Respondent and Daniel Marcus Hatton II were never married.

5. Prior to the death of Daniel Marcus Hatton II there was no relationship between Petitioner and the minor child.

6. Shortly after the death of Daniel Marcus Hatton II, Petitioner began visitations with the minor child with the approval and cooperation of the Respondent.

. . .

The trial court's order reflects the following conclusions of law:

The Court has jurisdiction to hear the Petition and enter orders in this case.... The Oregon Court has deferred jurisdiction to this Court to complete this case.

The Petitioner's Petition "qualifies" for consideration by the Court pursuant to the provisions of 10 O.S. § 5 A.1.C.(7).

Reasonable visitation by Petitioner with the child is deemed to be in the best interest of the child pursuant to the Court's findings herein under 10 O.S. § 5 D.1.[1, 2]

¶ 14 As previously noted, Mother asserted the trial court erred because of lack of jurisdiction. As we pointed out the trial court had jurisdiction to conclude the pending action. Thus the trial court's first conclusion of law was correct.

¶ 15 Mother's second proposition of error is that the trial court misapplied § 5, citing both defective factual and legal findings. In this connection, to obtain relief under § 5, Grandmother must prove the elements of that section, which state, in relevant part:

A. (1) Pursuant to the provisions of this section, any grandparent of an unmarried minor child may seek and be granted reasonable visitation rights to the child which visitation rights may be independent of either parent of the child if:

a. the district court deems it to be in the best interest of the child . . . , and

b. there is a showing of parental unfitness, or the grandparent has rebutted, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation rights to the grandparent of the child, and

c. the intact nuclear family has been disrupted in that one or more of the following conditions has occurred:

. . .

(7) the grandchild's parent has deserted the other parent for more than one (1) year and there exists a strong, continuous grandparental relationship between the grandparent and the child, . . .

¶ 16 Mother's argument focuses on the second prong, (A)(1)(b), of the Act, *i.e.*, parental fitness. She argues Grandmother did not allege she was unfit, and secondly argues Grandmother did not overcome the presumption that she was acting in Child's best interest when she denied visitation.

¶ 17 We decline to address what is essentially a request to reweigh the evidence presented to the trial court regarding Child's best interest. Instead we recast Mother's remaining propositions of error as requests to examine the underlying legal basis for the trial court's order.

■ ¶ 18 We hold the trial court's conclusion that Grandmother's petition "qualifies" for consideration by the court pursuant to § 5(A)(1)(c)(7) is erroneous as a matter of law.

¶ 19 Section 5(A)(1)(c) requires that "the intact nuclear family has been disrupted . . .". The definition of "intact nuclear family" is found at § 5(E)(2)(b):

b. "intact nuclear family" means a family consisting of the married father and mother of the child, . . .

¶ 20 The trial court found, and the parties agree, the biological father and mother were never married. It logically follows, therefore, that an "intact nuclear family" never existed to be disrupted. Simply put, the requirements of § 5(A)(1)(c) were not established by Grandmother; therefore, the trial court's legal conclusion that Grandmother's petition "qualifies" for consideration is erroneous.

¶ 21 Further, we find the trial court's citation of § 5(A)(1)(c)(7), ("the grandchild's parent has deserted the other parent for more than one (1) year . . .") as the event "disrupting" the nuclear family is likewise unsupported by this record. Again, this is so because implicit in this exception is that the deserting parent is married to the deserted one. Desertion of a non-married mother by the bio-

---

1. Previously in the order, the trial court made 15 specific findings of fact why the Child–Grandparent relationship should be continued.

2. Section 5(D)(1) permits a paternal grandparent to have visitation with the out-of-wedlock-off-

spring of their son only if the parental rights of the father have been terminated. The trial court's order contains no finding of termination. We conclude the requirements of § 5(D)(1) were not proven.

logical father of her child is not the definition of "desertion" contained in the statute. Therefore, under these facts, 5(A)(1)(c)(7) is not applicable.

¶ 22 However, this does not end our inquiry. Under these facts, a legal basis for the trial court's action is found in 5(A)(1)(c)(8), which states:

> except as otherwise provided in subsection D of this section, the grandchild's parents have never been married, are not residing in the same household and there exists a strong, continuous grandparental relationship between the grandparent and the child, ... [3]

¶ 23 Immediately apparent is the inconsistency of 5(A)(1)(c)(8). Starting with § 5(A)(1)(c)'s premise of an intact nuclear family, as defined by 5(E)(2)(b), § 5(A)(1)(c)(8) posits a "disrupting" condition of an intact nuclear family to be a situation in which the parents were never married. As the statute now reads, an intact nuclear family consisting of married parents is disrupted because the parents were never married in the first place. This is a logical impossibility.

¶ 24 We must therefore apply standard rules of interpretation to determine how to make sense of this provision.

> It is axiomatic that legislative intent is to be first sought in the language of the statute and when that intent is plainly expressed so that the meaning of the statute is clear and the statute is uncontrolled by other parts of the statute or other statutes upon the same subject, there is no room for judicial construction and the statute must be followed without further inquiry. *Cave Springs Public School Dist. I–30, of Adair County v. Blair,* 613 P.2d 1046 (Okl.1980). However, where adherence is urged to the "strict letter" of a statute and the literal interpretation would lead to an inconsistency or incongruity between different parts of the enactment as they bear on each other and would produce consequences clearly beyond legislative contemplation, judicial interpretation becomes necessary to avoid such incongruity and to ascertain the true meaning of the particu-

lar words in accord with the legislative intent. *State ex rel. Rucker v. Tapp,* 380 P.2d 260 (Okl.1963). *The goal of the court is always to construe apparently conflicting legislative enactments dealing with the same subject together as a harmonious whole so as to give effect to each provision.* Abbott v. Board of Trustees of Oscar Rose, Etc., 586 P.2d 1098 (Okl.1978). To accomplish this goal it is proper to consider the history and consistent purpose of the legislation on the subject and to discover the policy of the Legislature as disclosed by the course of the legislation. *State, ex rel., Rucker,* supra.

*McNeill v. City of Tulsa,* 1998 OK 2, ¶ 9, 953 P.2d 329, 332 (emphasis added).

¶ 25 As suggested by *Murrell, supra,* the statute before us is an attempt to balance the constitutional right of a parent to care for her children against the statutory right of a grandparent to maintain a relationship with a grandchild. *Murrell,* at ¶ 26, at 698. "Where the legislative intent would be defeated by construction of a statute as written the Court may transpose words and phrases as is necessary to arrive at the true meaning." *Russell v. Flanagan,* 1975 OK 173, ¶ 6, 544 P.2d 510, 511.

¶ 26 Applying 5(A)(1)(c)(8) in its current context, *i.e.* as one of nine specific "disrupting conditions" of a nuclear family, violates the principle to refrain from an interpretation creating an absurdity. However, this provision may be interpreted in a way consistent with the Legislature's intent and *McNeill's* principles of interpretation.

¶ 27 We hold, by its terms, 5(A)(1)(c)(8) is an exception to the "intact nuclear family" definition. It addresses a common situation in which a child is born out of wedlock, father's parental rights have not been terminated, and father's parents, *i.e.,* grandparents, seek to maintain visitation after a grandparent-grandchild relationship has been established. That situation is only addressed in the Act here. We do not believe that the Legislature intended to exclude the entire class of biological grandparents seeking visitation with a grandchild born out of

---

**3.** We addressed "subsection D" earlier in this opinion and determined it has no relevance un- der the facts of this case.

wedlock with whom a relationship has been established. Section 5(A)(1)(c)(8)'s current enumerated placement is unfortunate, but that placement does not create an ambiguity or render its provisions inapplicable. Renumbering this provision in future amendments would be easily accomplished and would not result in the current confusion.

¶ 28 Read in that context, the trial court found the parents were never married, were not living together, and found an existing, strong, continuous relationship between Grandmother and Child. The terms of this provision are met and this is the proper legal basis for the trial court's order granting visitation.

¶ 29 A correct decision, although based on wrong reasons or an incorrect theory, will not be reversed. *Benham v. Keller,* 1983 OK 68, ¶ 5, 673 P.2d 152, 154.

¶ 30 The trial court's order concludes by stating:

> The Court is well aware of the holdings in various state and federal cases pertaining to grandparental visitation. The Court has not reached its decision in this case based upon a general proposition that it is good for children to have a relationship with grandparents. The decision of the Court is based upon the factual history and evidence in this case and the application of the law to those facts.[4]

¶ 31 The trial court's findings of fact relating to Child's best interest and the motivations of the respective parties are well supported in this record. Its choice of a legal basis for its order was flawed, though not fatally so. The statute itself provides an alternative basis for an order granting grandparents rights. We find the trial court reached the correct decision under these facts, though we differ on the reason.

¶ 32 **AFFIRMED.**

GABBARD, P.J., concurs; RAPP, J., not participating.

---

4. The court found Mother's severance of Grandparent's visitation was "motivated primarily by convenience, spite and self-interests and not the best interests of the child."