2013 OK CIV APP 56

**Don W. TUCKER and Joseph H. Taft, Plaintiffs/Appellants,**

v.

**SPECIAL ENERGY CORP.; DPC Corporation; The Estate of Michael L. Ross, Deceased; Special Exploration Co., Inc.; SCM Development, L.L.C.; G & C Petroleum, Inc.; New Dominion, L.L.C.; Azar Minerals, Ltd.; DBS Investments, Ltd.; GBS Minerals, Ltd.; William L. Knobles; Resource Exploration and Development, Inc.; Krishna Family, L.L.C.; W.K. Chernicky, L.L.C.; The McDaniel Company, Inc.; Milagro Resources, Inc.; David J. Chernicky; Joseph D. Corpening; Alan W. Stracke; Chernico Exploration, Inc.; Sandra M.L. Watt; Kimberly A. Harper; Janet L. Gunzenheiser; Thomas C. Chernicky; Donald P. Chernicky; Gill Family Investments, Inc.; and The David J. Chernicky Trust, Defendants/Appellees.**

No. 109285.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 12, 2013.

Charles B. Davis, Norman, Oklahoma, for Appellants.

Andrew J. Waldron, Russell J. Walker, Walker & Walker, Oklahoma City, Oklahoma, Special Energy Corp., Special Exploration Co., Inc., SCM Development, L.L.C., G & C Petroleum, Inc., Azar Minerals, Ltd., DBS Investments, Ltd., GBS Minerals, Ltd., William L. Knobles, Resource Exploration and Development, Inc., Krishna Family, L.L.C., the McDaniel Company, Inc., Milagro Resources, Inc., Joseph D. Corpening, Alan W. Stracke, and Gill Family Investments, Inc., for Appellees.

Elizabeth C. Nichols, Edmond, Oklahoma, DPC Corporation, The Estate of Michael L. Ross, Deceased, New Dominion, L.L.C., W.K. Chernicky, L.L.C., David J. Chernicky, Chernico Exploration, Inc., Sandra M.L. Watt; Kimberly A. Harper, Janet L. Gunzenheiser, Thomas C. Chernicky, Donald P. Chernicky, and the David J. Chernicky Trust, for Appellees.

LARRY JOPLIN, Chief Judge.

¶1 Plaintiffs/Appellants Don W. Tucker and Joseph H. Taft (Plaintiffs) seek review of the trial court's order granting judgment to Defendants/Appellees Special Energy Corp., DPC Corporation, the Estate of Michael L. Ross, Deceased, Special Exploration Co., Inc., SCM Development, L.L.C., G & C Petroleum, Inc., New Dominion, L.L.C., Azar Minerals, Ltd., DBS Investments, Ltd., GBS Minerals, Ltd., William L. Knobles, Resource Exploration and Development, Inc., Krishna Family, L.L.C., W.K. Chernicky, L.L.C., the McDaniel Company, Inc., Milagro Resources, Inc., David J. Chernicky, Joseph D. Corpening, Alan W. Stracke, Chernico Exploration, Inc., Sandra M.L. Watt, Kimberly A. Harper, Janet L. Gunzenheiser, Thomas C. Chernicky, Donald P. Chernicky, Gill Family Investments, Inc., and The David J. Chernicky Trust (individually, by name, or, collectively, Defendants), in Plaintiffs' action to determine their quantum of interest in a certain mineral interest located in Lincoln County, Oklahoma. In this appeal, Plaintiffs challenge the trial court's order as depriving them of property without notice and an opportunity to be heard. Plaintiffs also challenge the trial court's post-judgment orders granting attorney's fees and costs to Defendants.

¶2 This case represents the latest in a succession of challenges by Plaintiffs to a forced pooling order entered in 1998 by the Oklahoma Corporation Commission. At each turn, Plaintiffs have complained that Defendants and/or their successors failed to notify them of the 1998 forced pooling proceedings before the Corporation Commission, rendering the 1998 pooling order invalid as to them. At each turn, and except as to issues outside the jurisdiction of the Corporation Commission, their due process challenges have been uniformly characterized as impermissible collateral attacks on the facially valid forced pooling order of the Corporation Commission issued in 1998. See, *Tucker v. Special Energy Corp.*, 2008 OK 57, 187 P.3d 730.

¶3 By mineral deed recorded December 17, 1947, W.H. Taft obtained a 1/32 (5 mineral acre) interest in the NE/4 of Section 8, Township 15 North, Range 2 East, Lincoln County, Oklahoma. W.H. Taft died intestate on November 30, 1958, survived by a wife, Hazel L. Taft, and two sons of a previous marriage, Thomas B. Taft and Joseph H. Taft. Hazel L. Taft died intestate on December 17, 1987.

¶4 On July 20, 1998, DPC filed an application in the Corporation Commission to force pool property including the Taft mineral acreage. The application listed W.H. and

Hazel as owners but contained no mailing address for either. *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 3, 187 P.3d at 732. At the time DPC filed its request to force pool, no proceeding had been commenced to determine the heirs of W.H. and Hazel, and DPC's landman testified concerning his efforts to identify all those "unknown persons" who might claim an interest from a deceased mineral owner in order to provide affected parties with notice of the proceedings. "On August 11, 1998, the Commission entered an order … force pooling the unit," finding "that DPC had exercised due diligence to locate each respondent and required DPC to escrow any funds payable to those respondents who could not be located." *Id.*

¶ 5 In 2004, Joseph Taft executed one or more leases of the five mineral acres at issue, including a lease to Plaintiff Don Tucker, of two-thirds (2/3) of the five-acre mineral interest at issue here. But, it was not until 2004 and 2005 that any proceedings were instituted to judicially determine the heirs of W.H. and Hazel.[1]

¶ 6 "On June 23, 2005, Don Tucker filed an amended application with the Commission, asking it to 'construe, clarify and vacate' the 1998 Pooling Order," then challenging the notice given of the 1998 force pool application, apparently based on the argument that Joseph's execution of mineral conveyances in 2004 constituted constructive notice of his status as an "heir" of W.H. *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 4, 187 P.3d at 732. "According to the September 1, 2005, report of the administrative law judge (ALJ), Tucker is a landman who searched for the heirs of W.H. Taft and obtained an agreement with Joseph Taft to attempt to recover the funds DPC had placed in escrow." *Id.* *See also, Tucker v. New Dominion, L.L.C.*, 2008 OK CIV APP 42, 182 P.3d 169. "The ALJ concluded that the notice given in the 1998 matter was sufficient … [,] that, because Joseph Taft was not a record owner in

1998, he would not have been a proper party," and "that Tucker's application was an impermissible collateral attack on the 1998 Pooling Order." *Id.* "Tucker appealed from the ALJ's report[,] a referee affirmed the ALJ's report on October 11, 2005," [and] "[t]he Commission denied Tucker's application on May 5, 2006." *Id.* *"Tucker did not appeal from that order."* *Id.* (Emphasis added.)

¶ 7 In December 2006, Plaintiffs commenced the instant action in Lincoln County "seeking an order 'determining and quieting title' in Tucker's leasehold interest and Taft's mineral interest as well as an accounting of the proceeds from the production of minerals attributable to those interests." *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 5, 187 P.3d at 733. In January 2007, and prior to assertion of any counter-claims, the attorney for the "Special Energy Corporation" Defendants[2] wrote to Plaintiffs, demanded the non-judicial resolution of Plaintiffs' claims, and tendered curative instruments to remove the cloud of Plaintiffs' claims and to quiet title in Defendants. Plaintiffs did not execute the tendered instruments, and Defendants asserted counter-claims to quiet title in them.

¶ 8 Also, "Defendants filed motions to dismiss, each asserting that Plaintiffs' action constituted a collateral attack on the 1998 Pooling Order." *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 5, 187 P.3d at 733. (Footnote omitted.) "The district court agreed[,] … dismissed the action[,] … and the Court of Civil Appeals affirmed." *Id.*

¶ 9 "Plaintiffs then filed a petition for certiorari, which th[e] [Oklahoma Supreme] Court granted." *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 5, 187 P.3d at 733. Recognizing the limited jurisdiction of the Corporation Commission, the Supreme Court reversed:

---

1. The probate of Hazel's estate was not commenced until 2004 in Stephens County. An action to determine W.H.'s heirs was not commenced until 2005 in Cleveland County.

2. i.e., Special Exploration Co., Inc., SCM Development, L.L.C., G & C Petroleum, Inc., Azar

Minerals, Ltd., DBS Investments, Ltd., GBS Minerals, Ltd., William L. Knobles, Resource Exploration and Development, Inc., Krishna Family, L.L.C., the McDaniel Company, Inc., Milagro Resources, Inc., Joseph D. Corpening, Alan W. Stracke, and Gill Family Investments, Inc.

The Commission does not have the authority to determine the effect of its order on a legal title to property. *Nilsen v. Ports of Call Oil Co.*, 1985 OK 104, ¶ 14, 711 P.2d 98, 102; *see also S. Union Prod. Co. v. Corp. Comm'n*, 1970 OK 16, 465 P.2d 454. That is the proper role of the district court, as district courts have jurisdiction to resolve disputes over private rights. *Leck [v. Cont'l Oil Co.]*, 1989 OK 173, ¶ 7, 800 P.2d [224,] at 226. That is the proper role of the district court, as district courts have jurisdiction to resolve disputes over private rights. In this action to quiet title and receive an accounting, Plaintiffs have properly invoked the jurisdiction of the district court. Indeed, the Commission could not give the remedy Plaintiffs seek.

According to their pleadings, Plaintiffs are not attempting to obtain an order declaring the 1998 Pooling Order void. Such an effort would be an impermissible collateral attack. Okla. Stat. tit. 52, § 111 (2001); *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶ 24, 847 P.2d 333, 339. Instead, Plaintiffs seek to clarify their ownership of a property interest that may entitle them to the proceeds held in escrow. Claims regarding 'the relationship of the parties; their duties; their rights and obligations; and the existence of liability for the breach of such duties,' are exclusively within the district court's jurisdiction. *Samson Res. Co. v. Corp. Comm'n*, 1985 OK 31, ¶ 15, 702 P.2d 19, 23; *see also Tenneco*, 1984 OK 52, 687 P.2d 1049. "The district court clearly has jurisdiction to adjudicate the legal effect ... of a Commission order ... upon title to land." *Nilsen*, 1985 OK 104, ¶ 12, 711 P.2d at 101.

*Tucker v. Special Energy Corp.*, 2008 OK 57, ¶¶ 10–11, 187 P.3d at 734. The Supreme Court consequently remanded for further proceedings, specifically "express[ing] no premature opinion regarding the merits of Plaintiff's claim." *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 13, 187 P.3d at 734. But, elaborating on the powers of the district court to review orders of the Corporation Commission, the Supreme Court observed:

Section 111 provides in pertinent part:

No collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court.... No court of this state except the Supreme Court, and it only on appeal, as herein provided, shall have jurisdiction to review ... any order ... of the Commission....

Okla. Stat. tit. 52, § 111 (2001). While a district court does have jurisdiction to consider whether a Commission order is facially void, *Chancellor v. Tenneco Oil Co.*, 1982 OK 122, ¶ 18, 653 P.2d 204, 206–07, Plaintiffs do not make that argument here. The district courts do not have jurisdiction to consider whether a Commission's order is void unless the face of the Commission record demonstrates that it lacked jurisdiction. *Fent v. Okla. Natural Gas Co.*, 1994 OK 108, ¶ 20, 898 P.2d 126, 135.

*Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 11, 187 P.3d at 734, footnote 4.

¶ 10 On remand, the parties entered into a series of stipulations establishing the facts we have recounted, and additionally:

a. The parties agree and stipulate that if the Oklahoma Corporation Commission's 1998 Pooling Order (Order No. 425859), for the NE/4 Section 8, Township 15 North, Range 2 East, Lincoln County, Oklahoma, is found to be valid and enforceable as to the Plaintiffs' interest, then the Plaintiffs are owed no additional sums (for royalty or otherwise) pursuant to the terms of the 1998 pooling order, or applicable statute.

b. The parties agree and stipulate that the Plaintiffs' claims for additional royalty, working interest and/or an accounting, are based upon the 1998 pooling order being found invalid and unenforceable as to the Plaintiffs' interest.

c. The parties agree and stipulate that the Plaintiffs are not owed any "escrowed" funds which were otherwise payable under the terms of the 1998 Pooling Order.

Based on the stipulations, the trial court held for Defendants:

Since the remand of this matter, the Plaintiffs admit that they are owed no sums under the 1998 Pooling Order, and instead, that Plaintiffs herein seek to have the pooling order declared void as to their interest. The Plaintiffs have specifically disclaimed being owed any funds "held in escrow." See Joint Stipulation 21(c). Based on this stipulation, the Court finds that the Plaintiffs' current and actual claims are the exact claims expressly rejected and disallowed as an "impermissible collateral attack" by the Oklahoma Supreme Court in its prior opinion. See *Tucker* at Par. 11.

Moreover, for the pooling order at issue in this case, Tucker previously challenged the validity of the pooling order by arguing it was premised on misrepresented testimony from DPC Corporation's landman, concerning his efforts to locate unknown heirs. The OCC rejected this effort and Tucker elected not to appeal the final order to the Oklahoma Supreme Court. See Joint Stipulation of Facts filed October 22, 2010, Par. 16. This determination is binding on this Court under the doctrine of issue preclusion. See *Fent v. Oklahoma Natural Gas Go. [Co.], a Div. of Oneok Inc.*, 1994 OK 108, Par. 15, 898 P.2d 126, 133.

In any event, however, the Court finds that even if the Plaintiffs were given yet another challenge to the 1998 Pooling Order, the 1998 Pooling Order was correctly and properly obtained because every diligent effort was made to provide notice to all those who would claim an interest. The "heir" of W.H. Taft was unknown because the "heir" (Joseph Taft) elected to file no probate action for nearly thirty (30) years. While the Plaintiffs attempt to argue that the Defendants had constructive notice that Plaintiff, Joseph Taft, was the "heir" of W.H. Taft by virtue of prior recorded mineral leases issued by the Plaintiff, Joseph H. Taft or others, such argument is unavailing given that the leases do not state that the Plaintiffs or their predecessors acquired their interest from W.H.

Taft, or that they are successors to the W.H. Taft mineral-interest of record. The Court finds that nothing in the record shows that the Defendants had any notice, whether actual or constructive, that the Plaintiffs were the "heirs" or successors to the record title interest of W.H. Taft, at the time of the 1998 Pooling Order proceeding.

From the evidence submitted, the Court finds that the 1998 Pooling Order is valid and proper in all respects and applies to the mineral interest now claimed by the Plaintiffs. From the evidence presented, the Court finds that Defendants gave proper notice of the pooling application to the record title owners and made a reasonable and diligent effort to locate any "heirs" of the deceased record title owners. See Joint Stipulation of Facts filed October 22, 2010, Par. 6–7. The Defendants also published notice of their pooling application, giving proper "constructive notice" to any unknown "heirs." *Id.* Nothing in the record shows that the Defendants were actually aware of the Joseph H. Taft's status as the "heir" of W.H. Taft, and nothing in any lease filed of record by Joseph H. Taft or Hazel L. Taft prior to the pooling application, states that they acquired their interest from W.H. Taft upon his passing. See Joint Stipulation of Facts filed October 22, 2010, Par. 3–4.

Given that the Plaintiffs admit that they are owed no sums under the 1998 Pooling Order, the Plaintiffs' equitable claim for an "accounting" is denied.

¶ 11 Plaintiffs commenced the instant appeal. On the post-judgment application of Special Energy Corporation Defendants,[3] and supported by specific findings of fact and conclusions of law applying the standards of *State ex rel Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, the trial court awarded $26,415.00 in attorney's fees against Plaintiffs pursuant to the Nonjudicial Marketable Title Procedures Act, 12 O.S.2001 §§ 1141.1–1141.5 (NMTPA). On the post-judgment application of the "NDL Defendants,"[4] and based on the authority of the

---

**3.** See, footnote 2.

**4.** That is, DPC Corporation, The Estate of Michael L. Ross, Deceased, New Dominion, L.L.C.,

NMTPA, as well as the recited consideration of the *Burk* factors, the trial court awarded them $34,832.90 for attorney's fees, $1,584.39 in costs, interest of $945.84, and expert witness fees incurred in support of the application for attorney's fees of $981.20 against Plaintiffs. Plaintiffs amended their petition in error to challenge those post-judgment awards.

¶ 12 Plaintiffs devote four of their five propositions of error again challenging the 1998 pooling order as a deprivation of their valuable mineral property interest without adequate notice and an opportunity to be heard. This complaint has been at the heart of every proceeding before the Corporation Commission and the trial court since 2005, and the Corporation Commission, Court of Civil Appeals and Supreme Court have all recognized that any challenge to the validity of the Corporation Commission's 1998 pooling order at this late date constitutes an impermissible collateral attack on the pooling order because no jurisdictional infirmity is shown on the face of the record.

¶ 13 That is to say, the Corporation Commission in 1998 conducted an inquiry into the efforts undertaken by DPS to ascertain and notify the unidentified owners of any mineral interest affected by the pooling application. The Corporation Commission found "that DPC had exercised due diligence to locate each respondent," and there is nothing on the face of the judgment roll casting that finding in support of the exercise of jurisdiction over the parties into question.

¶ 14 In 2005, Tucker commenced an action in the Corporation Commission to challenge the 1998 pooling order, arguing DPC should have known that Joseph H. Taft was an heir of W.H. Taft because, in 2004, Joseph H. Taft had executed leases of the subject mineral interest, but the Corporation Commission rejected that argument, and Tucker did not appeal. The unappealed disposition of that issue against Tucker is now final and beyond revisitation now.

¶ 15 In 2006, Tucker commenced the instant action, seeking an adjudication of title and an accounting for mineral production from the W.H. Taft mineral acreage, and, on motion of Defendants, the trial court dismissed the action. Although the Supreme Court cautioned that any attack on the validity of the pooling order in the present case would be viewed as an impermissible collateral attack, the Supreme Court nevertheless remanded the case to permit Plaintiffs to establish some ownership interest in the W.H. Taft mineral acreage.

■ ¶ 16 By stipulation, however, the Plaintiffs admitted their "claims for additional royalty, working interest and/or an accounting, [were] based upon the 1998 pooling order being found invalid and unenforceable as to the Plaintiffs' interest," and Plaintiffs confessed no money due from the production monies now withheld in escrow. Plaintiffs advanced as the sole ground for invalidating the 1998 pooling order the lack of notice of the 1998 application, but the sufficiency of the notices then given have been adjudicated as adequate, and those findings of adequate notice are now impervious to challenge as impermissible collateral attacks. We hold the trial court did not err in granting judgment to Defendants.

■ ¶ 17 On the issue of the awards of attorney's fees, we repeat the following facts. Plaintiffs commenced the instant action to Quiet Title and for Accounting on December 7, 2006, and the record bears out no pre-litigation offer by Plaintiffs to any of the Defendants/Appellees for non-judicial resolution of their quiet title claim. And, prior to assertion of any counter-claims, the attorney for the Special Exploration Corporation Defendants made written demand on Plaintiffs for non-judicial curative action, and submitted to Plaintiffs the instruments necessary to remove the cloud created by Plaintiffs' claims, to which demand Plaintiffs did not respond. The Defendants/Appellees DPC Corporation, et al.,[5] are the successors in title to the Special Energy Defendants.

W.K. Chernicky, L.L.C., David J. Chernicky, Chernico Exploration, Inc., Sandra M.L. Watt; Kimberly A. Harper, Janet L. Gunzenheiser,

Thomas C. Chernicky, Donald P. Chernicky, and the David J. Chernicky Trust.

5. i.e., DPC Corporation, The Estate of Michael L. Ross, Deceased, New Dominion, L.L.C., W.K.

¶ 18 The NMTPA "seeks to preserve judicial resources by encouraging resolution of title disputes through curative instruments rather than through quiet title actions." *Stump v. Cheek*, 2007 OK 97, ¶ 10, 179 P.3d 606, 609–612. (Footnote omitted.) The NMTPA "accomplishes this purpose by requiring a trial court to award attorney fees, costs, and expenses to a prevailing party in a quiet title action who attempted to first resolve the matter through a curative instrument in accordance with the Act." *Id.* (Footnote omitted.)

¶ 19 In the present case, although the record discloses that Plaintiffs afforded the Defendants/Appellees no pre-litigation opportunity for non-judicial resolution of their quiet title claim, the Special Energy Defendants demanded from Plaintiffs, in writing, the non-judicial resolution of the competing title claims and submitted to Plaintiffs the necessary instruments to affect that resolution *prior* to assertion of any quiet title counter claim and *before* incurring substantial pre-litigation expenses. In so doing, the Special Exploration Defendants fulfilled the underlying purpose of the NMTPA to avoid the expense of protracted litigation before they incurred any additional expenses in preparation for the litigation of the competing title claims. Plaintiffs persisted in their attack on the 1998 pooling order in spite of its impervious nature, only to stipulate and abandon their claims on remand confessing their claims were dependent on a determination of the impervious pooling order's invalidity.

¶ 20 Considering the underlying purpose of the NMTPA, we believe this case presents the precise set of facts and circumstances in which the NMTPA authorizes an award of attorney fees and costs against Plaintiffs. We consequently hold the trial court did not err in granting attorney's fees to the Defendants/Appellees under the authority of the NMTPA.

¶ 21 The orders of the trial court granting judgment to Defendants and awarding Defendants attorney's fees and costs are AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.