URBAN OIL & GAS PARTNERS B-1 v. DEVON ENERGY PRODUCTION CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:URBAN OIL & GAS PARTNERS B-1 v. DEVON ENERGY PRODUCTION CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 URBAN OIL & GAS PARTNERS B-1 v. DEVON ENERGY PRODUCTION CO.
2019 OK CIV APP 54
Case Number: 116867; Comp w/116868
Decided: 02/12/2019
Mandate Issued: 10/16/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 54, __ P.3d __

 

URBAN OIL & GAS PARTNERS B-1, LP and URBAN FUND II, LP, Plaintiffs/Appellees,
v.
DEVON ENERGY PRODUCTION COMPANY, L.P., Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
KINGFISHER COUNTY, OKLAHOMA

HONORABLE ROBERT E. DAVIS, TRIAL JUDGE

AFFIRMED

Karl F. Hirsch, Glenn M. White, HIRSCH, HEATH & WHITE, PLLC, Oklahoma City, Oklahoma, for Plaintiffs/Appellees

Bradley W. Welsh, GABLE & GOTWALS, Tulsa, Oklahoma, for Defendant/Appellant

P. THOMAS THORNBRUGH, JUDGE:

¶1 Defendant, Devon Energy Production Company. L.P. (Devon or Defendant), appeals from the trial court's grant of summary judgment and award of attorney fees in favor of Plaintiffs, Urban Oil & Gas Partners B-1, LP, and Urban Fund II, LP (Plaintiffs or Urban), in Plaintiffs' action to quiet title to Plaintiffs' interest in an oil and gas lease. This action is a companion with Case No. 116,868, a matter involving substantially identical facts alleged by Plaintiffs against Cimarex Energy Co., as Defendant, as to which we simultaneously issue our opinion today. Based on our review of the record and applicable law, we affirm the trial court's judgment and order.

BACKGROUND

¶2 This matter concerns ownership of certain "deep formation" drilling rights in an oil and gas lease known as the "Alig Lease" on minerals located in the SE/4 of Section 22, Township 15 North, Range 12 East, in Kingfisher County. Plaintiffs filed this action claiming they are the current owners of all rights associated with the Alig Lease and seeking to quiet title as against Defendant, which asserted an interest adverse to Plaintiffs in the deep formation rights. Plaintiffs also alleged they were entitled to attorney fees because, prior to filing suit, they submitted notice and a title curative document to Defendant pursuant to Oklahoma's Nonjudicial Marketable Title Procedures Act, 12 O.S.2011 §§ 1141.1 through 1141.5 ("NMTPA"), but Defendant had not responded.

¶3 Defendant admitted it claimed an interest in the Alig Lease as to mineral rights below 9,414 feet. It claimed that in 1991 Amoco Production Company (Amoco) -- a remote predecessor in interest of Plaintiffs -- made an "Assignment and Bill of Sale" of the Alig Lease to MW Petroleum Corporation[1] (the "1991 Assignment"), which allegedly "limits the extent of the assignment [in the Alig Lease] from the surface to 9,414 feet in depth." Plaintiffs admit that their title derives from the 1991 Assignment, but assert the assignment was not limited in depth. All parties admit that in 1966 an entity that later became Amoco -- Pan American Petroleum Corporation (Pan American) -- entered into an Operating Agreement with Brookwood Oil Company as operator, and that the Operating Agreement was still in effect when the 1991 Assignment was made. The Operating Agreement covered all of Section 22 but was effective only as to geologic formations encountered from the earth's surface to 9,414 feet below the surface.

¶4 In relevant part, the 1991 Assignment, naming Amoco as Assignor, conveyed to MW as Assignee, the following:

A. All right, title and interest of Assignor in and to the oil and gas leases described on Exhibit "A" (attached hereto and made a part hereof for all purposes), insofar as said leases cover the lands which are specifically described in Exhibit "A" opposite the separate designation of each said lease, subject, however, to the depth limitations described on Exhibit "A" (the "Leases") and, as between the parties hereto, subject to any restrictions, exceptions, reservations, conditions, limitations, burdens, contracts, agreements and other matters applicable to such leases and interests;

All right, title and interest of Assignor in, to and under, or derived from, all presently existing and valid oil, gas or mineral unitization, pooling, operating and communitization agreements, declarations and orders, and in and to the properties covered and the units created thereby, which are appurtenant to the Leases;

All right, title and interest of Assignor in, to and under, or derived from, all presently existing and valid . . . operating agreements . . . insofar as the same are appurtenant to the Leases; . . . .

¶5 Attached as Exhibit "A" is a schedule of approximately 20 oil and gas leases located in Kingfisher County. The leases are listed by number, original lessor, original lessee, lease date, full legal description, and recordation book and page. The Alig Lease description appears on a page together with a lease known as the Elliot Lease, and is described as follows:

 LEASE SCHEDULE
 
 EXHIBIT "A" PAGE ONE OF ONE STATE OF OKLAHOMA COUNTY OF KINGFISHER
 
 * * *
 
 
  
 RECORDED
 
 
 LEASE NO.
 LESSOR
 LESSEE
 DATE
 DESCRIPTION
 BOOK
 PAGE
 
 
 
 
 All right, title and interest in and to (and subject to) that certain Operating Agreement dated February 2, 1966, by and between Brookwood Oil Company, Operator, and Pan American Petroleum Corporation, Non-Operators, and all amendments thereto, covering All of Section 22, Township 15 North, Range 9 West, limited from the surface to 9,414 feet in depth.
 
 
 176824
 Mabel Elliott and Grady Elliott,
 Wife and husband
 B.F. Smith, Jr.
 12/08/56
 Township 15 North, Range 9 West
 Section 22: N/2 NE/4
 168
 576
 
 
 268760
 John L. Alig and Catherine
 Schwarz Alig and Kate Alig
 Alvah Hill
 07/10/57
 Township 15 North, Range 9 West
 Section 22: SE/4
 169
 351
 
 

 

¶6 Defendant also claims Amoco as a remote predecessor. It alleged that in 1998 Amoco made an assignment from Amoco to Gothic Energy (1998 Assignment), under which Amoco as Assignor conveyed to Gothic as Assignee, the following:

All of Assignor's right, title and interests in, to and under, or derived from, the oil and gas leasehold interests, royalty interests, overriding royalty interests, mineral interests, production payments, net profits interests and surface interests which are described in Exhibit "A"; . . . .

The Alig and Elliott leases appear on Exhibit A to the 1998 Assignment with the following description[2]:

 
 
 LPN
 LEASE DATE
 GOVT NO
 LESSOR
 LESSEE
 BOOK
 PAGE
 DESCRIPTION
 
 
 
 
 176824-1
 12/08/56
  
 ELLIOTT, MABEL, ET VIR
 SMITH, B.F. JR
 168
 576
 T-15-N R-9-W
 SEC 22; N/2 NE/4
 
 
 286760-1
 07/10/57
  
 ALIG, JOHN L., ET AL
 HILL, ALVAH
 169
 351
 T-15-N R-9-W
 SEC 22: SE/4
 
 

¶7 In addition to denying Plaintiffs' title, Defendant denied that Plaintiffs had complied with the NMTPA because Plaintiffs' curative instrument not only demanded that Devon relinquish all rights in the Alig Lease below 9,414 feet but also erroneously assumed Defendant claimed an interest in the Elliott Lease. Defendant has disclaimed any interest in the Elliott Lease.

¶8 Both parties sought summary judgment, asserting the undisputed facts supported their respective positions. They agreed that the "single issue" presented was "the proper legal construction" of the 1991 Assignment of the Alig Lease between Amoco and MW.[3]

 

¶9 The trial court granted Plaintiffs' motion for summary judgment and denied Devon's motion, finding specifically that:

 

[T]he 1991 Assignment from Amoco Production Company to MW Petroleum Corporation: (1) transferred all of Amoco Production Company's interest in the oil and gas lease known as the Alig Lease, including the Deep Formation Rights, to MW Petroleum Corporation; and, (2) did not except or reserve unto Amoco Production Company any interest in the Alig Lease. . . . [and that]

Plaintiffs, through mesne conveyances, are the legal, equitable, and rightful owners of the following oil and gas lease:

Date: 7/10/1957
Lessor: John L. Alig and Catherine Schwarz Alig and Kate Alig
Lessee: Alvah Hill
Description: SE/4 of Section 22-15N-9W, Kingfisher County . . .
Recorded: Book 169 at Page 351

¶10 Plaintiffs thereafter applied for attorney fees pursuant to the NMTPA. The trial court granted the application over Defendant's objection. Defendant filed this appeal.

STANDARD OF REVIEW

¶11 "Summary judgment settles only questions of law," which this Court reviews "by a de novo standard pursuant to the plenary power of the appellate courts without deference to the trial court." Tucker v. New Dominion, L.L.C., 2010 OK 14, ¶ 12, 230 P.3d 882. "Summary judgment shall be affirmed if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Beach v. Okla. Dep't of Pub. Safety, 2017 OK 40, ¶ 11, 398 P.3d 1 (citing 12 O.S.2011 § 2056(C) and Horton v. Hamilton, 2015 OK 6, ¶ 8, 345 P.3d 357); see also Rox Petroleum, L.L.C. v. New Dominion, L.L.C., 2008 OK 13, ¶ 2, 184 P.3d 502.

¶12 Also presenting an issue of law is whether a party is entitled to attorney fees pursuant to a contractual or statutory provision. "Whether a party is entitled to an award of attorney fees presents a question of law subject to de novo review, that is, without deference." Act S., LLC v. Reco Elec. Co., 2013 OK CIV APP 23, ¶ 10, 299 P.3d 505 (quoting S.R. v. Stockdale, 2009 OK CIV APP 68, ¶ 8, 216 P.3d 305).[4]

 

ANALYSIS

 

¶13 Although Defendant lists multiple allegations of error concerning the trial court's summary judgment decision, the essential issue presented -- as agreed by the parties in the trial court -- is whether Amoco's 1991 Assignment to MW reserved in Amoco an interest in the mineral leasehold below 9,414 feet as a matter of law. Our decision concerning attorney fees turns both on this issue and on whether Plaintiffs complied with the NMTPA.

The Trial Court Correctly Construed the 1991 Assignment

¶14 The trial court did not make a specific finding as to whether the 1991 Assignment is or is not ambiguous; however, both parties argued in the trial court that the document was unambiguous and supported their respective interpretations and positions as to its meaning and intent. The fact that the parties disagree or press for different constructions of a contract term does not make the agreement ambiguous. A contract is ambiguous if it is reasonably susceptible to at least two different constructions. Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541. Furthermore, even an ambiguous contract provision will present a question of law for the court "where the ambiguity can be clarified by reference to other parts of the contract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts." Paclawski v. Bristol Labs., Inc., 1967 OK 21, ¶ 24, 425 P.2d 452.

¶15 Based on our review of the 1991 Assignment in its entirety, and considering its provisions as a whole, we find the document is reasonably susceptible to only one interpretation as to the extent of the interest assigned by Amoco to MW. As explained below, we agree with the trial court that the 1991 Assignment assigned Amoco's entire interest to MW Petroleum, without reservation.

¶16 The 1991 Assignment is a contract and a conveyance. The basic rules of construing a conveyance in Oklahoma have been the same for many years.

When presented with a dispute concerning a conveyance, the trial court's duty is clear. "[T]he court's first priority is to ascertain the true intent of the parties, particularly that of the grantor, as gathered from the four corners of the instrument itself, considering each part and viewed in light of the circumstances attending and leading up to its execution. . . ." Messner v. Moorehead, 1990 OK 17, ¶ 8, 787 P.2d 1270, 1272. "If the language and terms of a conveyance are clear and unambiguous, then the written deed, and the laws in force at the time of the deed's execution will govern the rights and obligations of the grantor and grantee." Id., ¶ 9, 787 P.2d at 1273. If, however, the four corners of a conveyance demonstrate "an intrinsic uncertainty" the instrument is ambiguous. Id. "When the court determines that a deed is ambiguous, the court has a duty to resolve the ambiguity by considering parol and extrinsic evidence, including the parties' admissions and construction, and other circumstances." Crockett v. McKenzie, 1994 OK 3, ¶ 5, 867 P.2d 463, 465.

Plano Petroleum, LLC v. GHK Expl., L.P., 2011 OK 18, ¶ 7, 250 P.3d 328.

¶17 The 1991 Assignment expressly states that Amoco conveyed to MW all of Amoco's "right, title and interest" to the oil and gas leases described on Exhibit A "insofar as said leases cover the lands which are specifically described in Exhibit "A" opposite the separate designation of each said lease" (emphasis added). The Assignment also states clearly that some leases were "subject to" "depth limitations," and/or "restrictions, conditions, limitations, burdens, contracts, agreements and other matters applicable to such leases and interests . . . ."

¶18 As noted above, the only "land" described on Exhibit A "opposite the separate designation of" the Alig lease is the SE/4 of Section 22 of Township 15 North, Range 9 West. Although that page of Exhibit A also states that Amoco assigns its rights under the Operating Agreement with Brookwood,[5] at no point in either the body of the Assignment or in Exhibit A does Amoco expressly "reserve" or "except" any part of its interest in the mineral leasehold from the assignment. In contrast, certain other leases listed in Exhibit A are followed by land descriptions with clearly stated restrictions or exceptions.[6]

 

¶19 Even so, Defendant contends that the 1991 Assignment unambiguously "limited" Amoco's assignment of the Alig Lease to the first 9,414 feet below the surface. We disagree. The only reference to a depth limitation with regard to the Alig Lease is in Exhibit A's description of the 1966 Operating Agreement as "that certain Operating Agreement dated February 2, 1966, by and between Brookwood Oil Company, Operator, and Pan American Petroleum Corporation . . . and all amendments thereto, covering All of Section 22, Township 15 North, Range 9 West, limited from the surface to 9,414 feet in depth." The purpose of an operating agreement is to manage leases and to explore and develop oil and gas resources. There is nothing in the description of the Brookwood Operating Agreement as it appears on Exhibit A that would lead a reasonable person to believe that by virtue of an unrecorded operating agreement Amoco intended to expressly reserve or except from its lease assignment all of its interest in the mineral leasehold below 9,414 feet.[7]

 

¶20 For a reservation of a property interest to be effective "it must appear from the instrument that the grantor intended to and by appropriate words expressed the intent to reserve an interest" in itself. Rose v. Cook, 1952 OK 62, ¶ 23, 250 P.2d 848. The Court in Rose held that no reservation was created where the only reference to the "alleged" reservation was a statement in a deed's warranty clause as follows: "Except an undivided one-half of all the mineral rights, royalties and oil and gas lease moneys." Id. ¶ 0 (Court syllabus no. 2). See also Whitman v. Harrison, 1958 OK 141, 327 P.2d 680 (holding that a grantor who conveyed all of her surface rights in 80 acres subject to prior mineral conveyances covering 75 acres, without "expressly reserving" any interest, conveyed the grantor's reversionary interest in certain unexpired term mineral interests). The Court has not required that language of reservation appear only within the habendum clause of the conveyancing instrument, inasmuch as the parties' intent "is to be determined from the entire instrument." Barber v. Flynn, 1980 OK 175, ¶ 16, 628 P.2d 1151. Here, however, we find no clear expression within any provision of the 1991 Assignment that Amoco intended to limit, reserve, or except any part of its interest in the mineral leasehold from its conveyance to MW.

 

¶21 In Beattie v. State ex rel. Grand River Dam Auth., 2002 OK 3, 41 P.3d 377, the Court considered whether a "subject to" clause in a deed reserved in the property's seller certain easement removal and relocation rights so that those rights were not passed to the purchaser of the servient estate. The language in the deed stated, "This deed and conveyance is expressly made subject to," among other things, the five easements in question.[8] Id. ¶ 3. In finding the "subject to" language was insufficient to reserve property rights in the seller, the Court stated:

The "subject to" clause in the quitclaim deed did not reserve the relocation and removal rights in the U.S. The words "subject to" are frequently used in conveyances and have historically been interpreted as meaning "subordinate to," "subservient to," "limited by," or "charged with." Hendrickson v. Freericks, 620 P.2d 205, 209 (Alaska 1980). The Hendrickson court observed that:

When used in a deed these words are generally regarded as terms of qualification, not contract. They serve to put a purchaser on notice that he is receiving less than a fee simple. There is nothing in their use which connotes a reservation or retention of property rights.

Hendrickson, 620 P.2d at 209 (emphasis added) (citations omitted); See also Hancock v. Planned Dev. Corp., 791 P.2d 183, 186 (Utah 1990) (quoting Hendrickson); Wild River Adventures, Inc. v. Board of Trustees of School Dist. No. 8, 248 Mont. 397, 812 P.2d 344, 347 (1991) ("There is nothing in the use of the words 'subject to', in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights."). . . .

Holdings from this Court, reviewing language similar in effect to that of a "subject to" clause, have stated that a conveyance instrument containing terms such as "except right of way" or "less the right of way" successfully convey the grantor's entire interest in the servient estate, while recognizing the encumbrance. Jennings v. Amerada Petroleum Corp., 66 P.2d at 1071 (considering language "except right of way" and "less the right of way") and Putnam v. Oklahoma City, 1950 OK 272, 203 Okla. 570, 224 P.2d 270, 272 (considering language "except right of way"). Such words of qualification are simply not intended "to pass a less estate than the whole or entire interest of the grantor therein." Jennings, 66 P.2d at 1071.

Beattie, 2002 OK 3 at ¶¶ 17-18.

¶22 For the reasons discussed above, we find that the situation here is similar to that presented in Beattie. The "subject to" language appearing on the face of the Assignment and on Exhibit A is inappropriate to show any intent by Amoco to reserve a property interest in the "deep formation" rights as Defendant contends. Rather, such language served only to inform the purchaser assignee that, while Amoco's entire interest in the Alig Lease was being assigned, that lease had previously been encumbered, or qualified, by an agreement that limited drilling to only certain depths. Nothing in the language of the 1991 Assignment suggests an express reservation by Amoco of a property interest in the deeper formations covered by the Alig Lease, and Defendant has not cited any statute, case law, or legal principle under which Amoco might be presumed to have done so.[9]

 

¶23 Defendant further contends that the trial court would have reached a conclusion in its favor if the court had considered only the "four corners" of the 1991 Assignment. As indicated by our discussion above, however, this argument is unsupported by the record. Although the trial court did not expressly find that the 1991 Assignment was unambiguous, its order did not indicate that it rejected the parties' agreement that the relevant terms of the Assignment were unambiguous. We said above that we agree there is no ambiguity in the Assignment as to the nature and extent of the interest conveyed. Thus, we reject this argument by Defendant as well.

 

¶24 We find the language of the 1991 Assignment, including Exhibit A, was merely intended to give notice to MW that the leasehold -- the ownership of which generally would include the right to search for, develop, and produce oil, gas and other minerals from the leasehold, was already burdened by the terms of an Operating Agreement under which the parties had agreed not to drill below 9,414 feet. However, the 1991 Assignment evidences no intent by Amoco to reserve or retain mineral leasehold rights or to otherwise reduce the property interest being conveyed. We therefore affirm the trial court's decision on this issue.

Attorney Fees 

¶25 Defendant also appeals the trial court's award of attorney fees and costs to Plaintiffs pursuant to the NMTPA, 12 O.S.2011 §§ 1141.1 through 1141.5. Defendant does not contest the reasonableness of the fees, costs, and expenses charged but challenges Plaintiffs' statutory entitlement to those items under the Act.

¶26 The NMTPA provides an alternative procedure to an owner who in good faith claims a cloud on their title or other interest in real property, and encourages owners to use curative instruments to remove clouds on title rather than litigation. The Act provides that if an owner, or "requestor," sends notice and a curative instrument to a respondent identifying an apparent cloud on title, and the respondent refuses to sign the instrument,

then in the event that the requestor files an action to quiet title . . . and the civil action results in a judgment for the plaintiff which could have been accomplished through the execution and delivery of a curative instrument or the taking of corrective action identified in [the requestor's] notice, the plaintiff in the quiet title action, in addition to any other requested relief, shall be entitled to recover damages . . . and the expenses of litigation . . .against the respondent, including costs and reasonable attorney fees.

12 O.S.2011 § 1141.5(A)(4).

¶27 The purpose of the NMTPA is "to preserve judicial resources by encouraging resolution of title disputes through curative instruments rather than through quiet title actions." Stump v. Cheek, 2007 OK 97, ¶ 10, 179 P.3d 606 (footnote omitted). The Act "accomplishes this purpose by requiring a trial court to award attorney fees, costs, and expenses to a prevailing party in a quiet title action who attempted to first resolve the matter through a curative instrument in accordance with the Act." Id.

¶28 Here, prior to filing this action Plaintiffs submitted to Defendant a demand letter asserting a cloud on Plaintiffs' title by virtue of Defendant's apparent claim of an interest in the SE/4 and the N/2 NE/4 of Section 22 leasehold stemming from assignments of the Alig Lease (as to the SE/4) and the Elliott Lease (as to the N/2 NE/4). Plaintiffs tendered a proposed quitclaim assignment by which Defendant would quitclaim to Plaintiffs its interest in both the Alig and Elliott leases.

¶29 Defendant did not respond, and Plaintiffs brought this action to quiet title. Defendant then disclaimed any title or interest in the Elliott lease. It now asserts Plaintiffs are not entitled to fees under the NMTPA because "the proposed curative instrument transmitted by [Plaintiffs] sought relief greater than that awarded by the district court, and thus did not conform to the relief ultimately granted by the district court or to the corrective action contemplated by § 1141.5(A)(4)."[10]

 

¶30 To support this argument in the trial court, Defendant relied on Head v. McCracken, 2004 OK 84, 102 P.3d 670, a case involving a title defect created by an easement against a servient estate. The Supreme Court held that attorney fees were not warranted in that matter, primarily because the easement which the trial court had ultimately granted was significantly narrower than the one the dominant estate holder had requested in his notice prior to filing suit.

 

¶31 We find the facts in the instant action are more consistent with the purpose of the NMTPA to avoid unnecessary litigation than were the facts presented by Head v. McCracken. Here, although the initial curative document submitted by Plaintiffs to Defendant requested that Defendant quitclaim any interest in the lands covered by the Elliott Lease as well as those covered by the Alig Lease, the result of the litigation between the parties was that Defendant disclaimed any interest in the lands covered by the Elliott Lease, and the trial court quieted Plaintiffs' title in the lands covered by the Alig Lease. As such, the judgment for Plaintiffs that ultimately was entered resulted not only in quieting Plaintiff's title as to the lands covered by the Alig Lease, but also in Defendant's disclaimer of any interest in the lands covered by the Elliott Lease. In other words, the same result would have been accomplished if Defendant had merely executed and delivered the curative instrument initially tendered with Plaintiff's notice prior to filing this case.

¶32 Considering the purpose and intent of the NMTPA, we believe the circumstances here "present the precise set of facts and circumstances in which the NMTPA authorizes an award of attorney fees and costs" in favor of Plaintiffs. Tucker v. Special Energy Corp., 2013 OK CIV APP 56, ¶¶ 17-20, 308 P.3d 169. Accordingly, we hold the trial court did not err in awarding attorney fees, costs, and expenses to Plaintiffs under authority of the NMTPA.

CONCLUSION

¶33 The trial court's judgment in favor of Plaintiffs and its order awarding them attorney fees, costs, and expenses are affirmed.

¶34 AFFIRMED.

FISCHER, P.J., and GOODMAN, J., concur.

FOOTNOTES

[1] The 1991 Assignment reflects that it was recorded in Kingfisher County land records in July 1991. See Tab 1 of Plaintiffs' motion for summary judgment.

[2] Subsequently, Gothic sold its interest to Chesapeake, which then conveyed to both Cimarex and Devon.

[3] See Devon's response/cross-motion for summary judgment, filed 11/20/17, at p.2, quoting Plaintiffs' motion for summary judgment.

[4] Generally, the trial court's decision will be affirmed unless the court abused its discretion. State ex rel. Burk v. City of Okla. City, 1979 OK 115, ¶ 22, 598 P.2d 659. To reverse for abuse of discretion, it must be found that the trial court made a clearly erroneous conclusion and judgment, against reason and evidence. Abel v. Tisdale, 1980 OK 161, ¶ 20, 619 P.2d 608. The parties in the instant action stipulated to the reasonableness of the attorney fees awarded, and argued only as to whether Plaintiffs' were entitled to fees under the NMTPA. Thus, only a question of law is present.

[5] Such intent is expressed generally in the body of the Assignment and specifically in Exhibit A, in the language preceding the description of the Alig Lease, stating Amoco's assignment of "[a]ll right, title and interest in and to . . . that certain Operating Agreement dated February 2, 1966," between Brookwood and Pan American.

[6] For example, land descriptions for Leases No. 180081 and 259010, respectively, are as follows (emphasis added):

Township 16 North, Range 9 West
Section 32: NW/4 less ½ acre

in the SW corner
described by metes and bounds

and

Township 16 North, Range 9 West
Section 32: NE/4 from the surface to the

stratigraphic equivalent of
10,600 feet

[7] Although not necessary to our analysis here, we note that the latter conclusion is further supported by the language of the Operating Agreement itself, which in its own Exhibit "A" describes the "lands" covered by the agreement as including all of Section 22, 15N, 9W but stating only that the Agreement itself is "limited to all formations encountered from the surface of the earth to a depth of 9414 feet." [See Appendix to Plaintiff's Summary Judgment Motion, appearing at Tab 5 of Vol. 1 of the record]. We further note that the Alig Lease, which was executed in July 1957, was for a term of 10 years "or as long thereafter as oil or gas, or either of them, is produced from said land." Though the legal effect of a purported severance by reservation -- as Defendant proposes -- of leasehold rights to formations below 9,414 feet is not at issue here, it appears doubtful that Amoco would have intended to risk the possibility of terminating the lease altogether by attempting to segregate the right to produce from deep formations more than 10 years after execution of the primary lease.

[8] The easements were held by the Defendant, Grand River Dam Authority (GRDA). Each contained a provision giving the Plaintiff's seller, the U.S.A., the right to require relocation or removal of GRDA facilities should the U.S. need the property occupied by those facilities. In addition to arguing that the "subject to" language in the deed from the U.S. to the Plaintiffs was sufficient to reserve in the seller its right to demand relocation, GRDA argued that the relocation rights were not assignable at all. The Supreme Court remanded the assignability issue to the trial court for resolution of disputed fact issues, 2002 OK 3 at ¶¶ 7-15, but decided the "subject to" language as a matter of law. Id. ¶¶ 16-18.

[9] In its trial court brief, Defendant cited Cox v. Butts, 1915 OK 442, 149 P. 1020, as standing for the proposition that "subject to" language in a lease assignment can connote the reservation of a property interest. We disagree with this interpretation of the case. Cox held that, without a provision expressly stating as much, an assignee's acceptance of a lease assignment "subject to" the terms of an existing operating agreement did not impose personal liability on the assignee for operational expenses in excess of the proportion attributable to the working interest assigned.

[10] Exhibit B to Defendant's Amended Petition in Error. Although Defendant submitted a transcript of the hearing on attorney fees in a supplemental record submitted with its amended petition in error, Defendant did not include or designate for inclusion in the record Plaintiffs' motion for attorney fees or Defendant's response to that motion, and neither party filed briefs on appeal concerning the attorney fee issue. We thus consider Defendant's appeal on this issue based solely on its Amended Petition in Error and the argument in the hearing transcript.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2009 OK CIV APP 68, 216 P.3d 305, S.R. v. STOCKDALE
Discussed
 2013 OK CIV APP 23, 299 P.3d 505, ACT SOUTH, LLC v. RECO ELECTRIC CO.
Discussed
 2013 OK CIV APP 56, 308 P.3d 169, TUCKER v. SPECIAL ENERGY CORP.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 17, 787 P.2d 1270, 61 OBJ 575, Messner v. Moorehead
Discussed
 1915 OK 442, 149 P. 1090, 48 Okla. 147, COX v. BUTTS.
Cited
 1994 OK 3, 867 P.2d 463, 65 OBJ 296, Crockett v. McKenzie
Discussed
 1952 OK 62, 250 P.2d 848, 207 Okla 582, ROSE v. COOK
Discussed
 1958 OK 141, 327 P.2d 680, WHITMAN v. HARRISON
Discussed
 2002 OK 3, 41 P.3d 377, 73 OBJ 137, BEATTIE v. STATE ex. rel. GRAND RIVER DAM AUTHORITY
Discussed at Length
 1967 OK 21, 425 P.2d 452, PACLAWSKI v. BRISTOL LABORATORIES, INC.
Discussed
 2003 OK 5, 63 P.3d 541, PITCO PRODUCTION COMPANY v. CHAPARRAL ENERGY, INC.
Discussed
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed
 2007 OK 97, 179 P.3d 606, STUMP v. CHEEK
Discussed
 2008 OK 13, 184 P.3d 502, ROX PETROLEUM, L.L.C. v. NEW DOMINION, L.L.C.
Discussed
 2010 OK 14, 230 P.3d 882, TUCKER v. NEW DOMINION, L.L.C.
Discussed
 2011 OK 18, 250 P.3d 328, PLANO PETROLEUM, LLC v. GHK EXPLORATION, L.P.
Discussed
 2015 OK 6, 345 P.3d 357, HORTON v. HAMILTON
Discussed
 2017 OK 40, 398 P.3d 1, BEACH v. OKLAHOMA DEPARTMENT OF PUBLIC SAFETY
Discussed
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed
 1980 OK 161, 619 P.2d 608, Abel v. Tisdale
Discussed
 1980 OK 175, 628 P.2d 1151, Barber v. Flynn
Discussed
 1950 OK 272, 224 P.2d 270, 203 Okla. 570, PUTNAM v. OKLAHOMA CITY
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1141.1, Short Title
Discussed
 12 O.S. 1141.5, Liability for Damages, Costs, and Attorney Fees
Cited
 12 O.S. 2056, Motion for Summary Judgment
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA